**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| VICTOR MANUEL RAMIREZ NAJERA,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; APPFOLIO, INC.; and NATIONSTAR MORTGAGE LLC d/b/a RUSHMORE SERVICING.<br><br>　　　　　Defendant. | Case No.: 4:25-cv-443 |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**<u>PLAINTIFF'S AMENDED MOTION TO COMPEL DISCOVERY</u>**

Plaintiff Victor Manuel Ramirez Najera ("Plaintiff"), by and through the undersigned counsel, files this Brief in Support of his Amended Motion to Compel Discovery ("Motion") from Defendant Experian Information Solutions, Inc. ("Experian") (each a "Party," collectively the "Parties").

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ......................................................................................... 2

III.  ARGUMENT ..................................................................................................... 4

    A.    The DRDD is plainly responsive to Plaintiff's written discovery requests. ................... 4

    B.    Experian may not withhold relevant, responsive discovery based on an assertion that the information sought is confidential or proprietary. .................................. 5

    C.    Find Consumer's rules make up a substantial portion of Experian's defense to Plaintiff's claims under § 1681e(b) and are, therefore, directly relevant. .................................. 6

    D.    Production of the DRDD is proportional to the needs of the case because: (1) the burden to produce the DRDD is minimal; (2) Experian's defense relies heavily on the rules detailed in the DRDD; (3) Plaintiff has no other avenue to obtain the information sought; (4) Plaintiff has a viable claim for both actual and punitive damages under the FCRA; (5) Plaintiff's claims relate to important questions about Experian's matching procedures; and (6) Experian's access to this information gives it an unfair advantage at trial. ............................ 11

        i.     Burden or Expense. ......................................................................... 12

        ii.    Importance of Discovery in Resolving Issues. ..................................... 13

        iii.   Parties' Access to Relevant Information. .............................................. 14

        iv.    Amount in Controversy. ................................................................... 15

        v.     Importance of Issues at Stake. .......................................................... 17

        vi.    Parties' Resources. .......................................................................... 19

    E.    Experian has not satisfied its burden to show good cause. ........................................... 20

    F.    Plaintiff is entitled to sanctions. ................................................................................ 24

IV.   CONCLUSION ................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2008 WL 4663568 (E.D. Tex. Oct. 21, 2008) ................................................................................................................... 4

*AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69 (Fed. Cl. 2008) ........................................ 20

*Agustin Efrain Rivera-Fernandez v. Experian Information Solutions, Inc., et al.*, Case No. 6:23-cv-01408 (M.D. Fla. 2023) ...................................................................................................... 18

*Alex Alvarex Garcia v. Experian Information Solutions Inc.*, Case No. 5:23-cv-04672 (N.D. Cal. 2023) .............................................................................................................................. 18

*Allen v. City of N.Y.*, 420 F. Supp. 2d 295 (S.D.N.Y. 2006) ........................................................ 22

*Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ............................................ 15

*Anderson v. Home Ins. Co.*, 724 F.2d 82 (8th Cir. 1983) ............................................................... 2

*Antonio Rodriguez Portal v. Experian Information Solutions, Inc.*, et al., Case No. 1:22-cv-20304 (S.D. Fla. 2022) ....................................................................................................... 17

*Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441 (D. Minn. 2011) ............................ 10

*Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006 (10th Cir. 2011) ................................. 16

*Boris v. Choicepoint Servs*, 249 F. Supp. 2d 851 (W.D. Ky. 2003) ............................................ 15

*Calixto Efrain Martinez Miralles v. Experian Information Solutions, Inc., et al.*, Case No. 1:24-cv-01205 (W.D. Tex. 2024) ......................................................................................... 17

*Childers v. Rent-A-Car E., Inc.*, No. CV 21-960, 2024 WL 1050501 (E.D. La. Mar. 11, 2024) . 11

Dean v. Anderson, Case No. 01-2599-JAR, 2002 U.S. Dist. LEXIS 11536 (D. Kan. June 6, 2002) ........................................................................................................................................... 3

*Emmanuel Flores Barboza v. Experian Information Solutions, Inc.*, Case No. 2:22-cv-02615 (C.D. Cal. 2022) ..................................................................................................................... 18

*FemtoMetrix Inc. v. Huang*, No. 8:22-CV-01624-JWH-KES, 2024 WL 3915136 (C.D. Cal. July 19, 2024) ..................................................................................................................................... 22

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079 (N.D. Ill. 2015) 22

*Goodson v. Nasco Healthcare Inc.*, Civil Action No. 3:21-CV-1467-N, 2023 U.S. Dist. LEXIS 152075 (N.D. Tex. Aug. 28, 2023) ................................................................................... 3, 12

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) ................................... 16

*Hammer v. Sam's E., Inc.*, 754 F.3d 492 (8th Cir. 2014), *abrogation on other grounds recognized by Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957 (8th Cir. 2019) ..................... 16

Hunsinger v. SKO Brenner Am., Inc., No. 3:13-cv-0988-D, 2014 U.S. Dist. LEXIS 3840 (N.D. Tex. Jan. 9, 2014) ..................................................................................................................... 3, 5

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2023 WL 3687427 (E.D. La. May 26, 2023) ............................................................................................................................. 11

*In re Adkins Supply, Inc.*, 555 B.R. 579 (Bankr. N.D. Tex. 2016) .............................................. 22

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 312MD02385DRHSCW, 2014 WL 321656 (S.D. Ill. Jan. 29, 2014) ....................................................................................... 22

*In re Terra Int'l, Inc.*, 134 F.3d 302 (5th Cir. 1998) .............................................................. 20, 22

*ION, Inc. v. Sercel, Inc.*, 5:06-cv-236, 2009 WL 10677595 (E.D. Tex. May 20, 2009) ............. 20

*Javier Morales Vera v. Experian Information Solutions, Inc.*, Case No. 1:24-cv-00696 (N.D. Ga. 2024) .......................................................................................................................................... 18

*Jose Del Rosario Hernandez Franco v. Experian Information Solutions, Inc., et. al.*, Case No. 5:25-cv-05068 (W.D. Ark. 2025) ............................................................................................. 18

*Jose Rodolfo Mejia Alvarado v. Experian Information Solutions, Inc., et al.*, Case No. 8:24-cv-02452 (D. Md. 2024) ................................................................................................................. 18

*Juanita Rivas Martinez v. Experian Information Solutions, Inc.*, et al., Case No. 6:23-cv-01264 (D. Kan. 2023) ............................................................................................................................ 18

*Magēmā Technology LLC v. Phillips 66*, 153 F.4th 1248 (Fed. Cir. 2025) ................................... 9

*Maggette v. BL Dev. Corp.*, No. CIV.A. 2:07CV181-M-A, 2009 WL 1767091 (N.D. Miss. June 18, 2009) .............................................................................................................................. 15, 19

*Mariana Santamaria Rivas v. Experian Information Solutions, Inc., et al.*, Case No. 1:25-cv-00818 (D. Md. 2025) .................................................................................................. 18

*Marquette Bus. Credit, Inc. v. Gleason*, No. 14-CV-354 (MJD/LIB), 2015 WL 12776599 (D. Minn. Jan. 30, 2015) ............................................................................................. 2

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ................ 6

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 475 (N.D. Tex. 2005) ............................................. 6

*Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220 (N.D. Tex. 2016)), *on reconsideration in part*, No. 18-7889, 2023 WL 4706200 (E.D. La. July 24, 2023)) ............. 11

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .............................................. 16

*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) ................................................. 6

*Price v. Sallie Mae, Inc.*, No. 1:08-CV-2712-CAP-ECS, 2010 U.S. Dist. LEXIS 155881 (N.D. Ga. Aug. 23, 2010) ............................................................................................... 17

*Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253 (S.D. Fla. 2009) ............................. 17

*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ....................................................... 16

*Ronald Garcia Delgado v. Experian Information Solutions, Inc.*, Case No. 4:24-cv-00637 (E.D. Tex. 2024) ............................................................................................................ 18

*S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006). ......................................................... 3

*Samsung Elecs. America Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) ............................ 3

*Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144 (11th Cir. 2024) ............. 16

*Sloane v. Equifax*, 510 F.3d 495 (4th Cir. 2007) ............................................................. 16

*Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 WL 5299791 (N.D. Ill. Nov. 15, 2021) ...................................................................................................................... 20

*Tyler v. Iowa State Trooper Badge No. 297*, 158 F.R.D. 632 (N.D. Iowa 1994) ..................... 2

*United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978) ................................................... 20

*United States v. Panhandle E. Corp.*, 118 F.R.D. 346 (D. Del. 1988) ................................. 23

*Volm Companies, Inc. v. Kwik Lok Corp.*, No. 19-C-244, 2019 WL 13218380 (E.D. Wis. July 8, 2019) ..................................................................................................................... 23

*Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606 (D. Neb. 2001) .............................................. 2

*Zala v. Trans Union, LLC*, Civil Action No. 3:99-CV-0399-D, 2001 U.S. Dist. LEXIS 549 (N.D. Tex. Jan. 17, 2001) ............................................................................................... 6


**Statutes**
15 U.S.C. § 1681n ..................................................................................................... 16


**Rules**
Fed. R. Civ. P. 26 ................................................................................................... 2, 4
Fed. R. Civ. P. 26(b)(1) ............................................................................................. 2
Fed. R. Civ. P. 26(c)(1)(G) ........................................................................................ 5
Fed. R. Civ. P. 30 .................................................................................................... 4
Fed. R. Civ. P. 33 .................................................................................................... 4
Fed. R. Civ. P. 33(b)(1)(A) ......................................................................................... 2
Fed. R. Civ. P. 34 .................................................................................................... 4
Fed. R. Civ. P. 34(a)(1)(A). ........................................................................................ 2
Fed. R. Civ. P. 34(b)(2). ............................................................................................ 2
Fed. R. Civ. P. 34(b)(2)(E)(i) ..................................................................................... 10
Fed. R. Civ. P. 37 .................................................................................................... 4
Fed. R. Civ. P. 37(a)(3)(B). ........................................................................................ 4
Fed. R. Civ. P. 37(a)(5)(ii) ..................................................................................... 4, 24
Fed. R. Civ. P. 37(a)(5)(iii) .................................................................................... 4, 24

**Treatises**

Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2035 (2d ed.1994) .............................................................................................. 20

## I.    INTRODUCTION

At some point in time, Experian received account information from a data furnisher, Nationstar Mortgage LLC ("Rushmore"), relating to Plaintiff's father. Upon receipt, Experian utilized its automated matching algorithm, named "Find Consumer," which – operating according to rules created and set by Experian – incorrectly identified the Rushmore account as belonging to Plaintiff rather than his father.

Plaintiff's claims against Experian under 15 U.S.C. § 1681e(b) center around Experian's procedures that led to the mixing of Plaintiff's credit file in the first place which ultimately led to violations of § 1681e(b) when Experian prepared consumer reports about Plaintiff containing inaccurate information. The Find Consumer rules **are** those procedures, and these rules are described in a specific, identified document maintained by Experian and readily accessible to it, called the Find Consumer Detail Requirements and Design Document ("DRDD"). Those rules determine what information is and is not added to a consumer's credit file. When a consumer's credit file is mixed, like Plaintiff's was, that mix occurs **because** of Find Consumer's rules.

Experian's **central defense** in response to Plaintiff's claims under § 1681e(b) is that Experian's procedures for matching consumer information to a consumer's file are reasonable, and that it was reasonable for Experian to match the Rushmore account belonging to Plaintiff's father to Plaintiff's credit file.

Plaintiff apologizes to the Court for originally submitting this Motion on the final day of discovery. Plaintiff only recently learned of the DRDD's existence. Experian has never identified this document, and its relevance became apparent only after testimony from a key witness on November 17, 2025. The witness – an employee formerly employed by Experian for 40+ years, and an inventor on patents describing the Find Consumer algorithm – identified the DRDD for

1

the first time. After learning the document's name, Plaintiff conducted extensive research but could not locate a single reported decision or filing referencing it. This sequence of events highlights the substantial informational asymmetry plaintiffs face in FCRA litigation and explains why the timing of this motion is both justified and unavoidable. Plaintiff did seek to avoid burdening the Court with this Motion by asking Experian to produce the DRDD. Despite the obvious relevance of the Find Consumer rules, Experian has refused to produce the DRDD and has been unable to identify any set of circumstances under which it will do so absent a Court Order compelling it to do so. Therefore, regrettably, Plaintiff is forced to seek the Court's involvement to compel Experian to produce this necessary, relevant document.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, all parties "have an affirmative duty to respond to discovery requests and make reasonable, diligent efforts to produce truthful, discoverable information." *Marquette Bus. Credit, Inc. v. Gleason*, No. 14-CV-354 (MJD/LIB), 2015 WL 12776599, at *3 (D. Minn. Jan. 30, 2015) (citing Fed. R. Civ. P. 26, 33(b)(1)(A), 34(b)(2); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 609 (D. Neb. 2001) ("The parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery[.]"); *Tyler v. Iowa State Trooper Badge No. 297*, 158 F.R.D. 632, 635 (N.D. Iowa 1994) ("Sanctions may be imposed upon a pro se litigant for failure to cooperate in discovery.") (citing *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983))). Rule 34 provides that "[a] party may serve on any other party a request […] to produce […] any designated documents" that are discoverable. Fed. R. Civ. P. 34(a)(1)(A). Parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The federal test for relevance is extremely broad, and discovery sought "need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant." *Goodson v. Nasco Healthcare Inc.*, Civil Action No. 3:21-CV-1467-N, 2023 U.S. Dist. LEXIS 152075, at *3 (N.D. Tex. Aug. 28, 2023) (citing *Samsung Elecs. America Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017)). When information being sought appears relevant, the Fifth Circuit places the burden on the non-movant to show that the information sought is not relevant, and to satisfy this burden, must show that "the information sought can have no possible bearing on the claim or defense of a party." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

The question of proportionality has multiple considerations, including: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Goodson*, 2023 U.S. Dist. LEXIS 152075, at *7-8 (citations omitted).

As this Court has held, a party may not withhold relevant and responsive documents or information based only on an assertion that the discovery sought is confidential. *See Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-cv-0988-D, 2014 U.S. Dist. LEXIS 3840, at *4 (N.D. Tex. Jan. 9, 2014) ("Confidentiality does not act as a per se bar to disclosure or constitute grounds to withhold documents from discovery."); *see also, Dean v. Anderson*, Case No. 01-2599-JAR, 2002 U.S. Dist. LEXIS 11536, at *9 (D. Kan. June 6, 2002) ("[I]t is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery.").

When a party fails or refuses to respond to a discovery request, the party seeking the discovery may move the Court to compel the opposing party to respond. *See* Fed. R. Civ. P.

3

37(a)(3)(B). Under the Rules, a court "must" grant sanctions in the form of expenses, including attorneys' fees, when a motion to compel is granted, unless the position of the party resisting discovery was "substantially justified" or "other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(ii) and (iii).

## III.    ARGUMENT

Experian "should be well aware of [its] obligation[] to produce all documents responsive to discovery requests that are not privileged." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2008 WL 4663568, at *4 (E.D. Tex. Oct. 21, 2008) (citing Fed. R. Civ. P. 26, 30, 33, 34, 37) (additional citations omitted). However, it has failed to do so here, withholding evidence plainly responsive to Plaintiff's Rule 34 requests for production with no valid basis for doing so. Worse, the evidence withheld is of facial relevance and fundamentally crucial to the prosecution and of Plaintiff's claims and the testing of Experian's defenses. As the only party with access to the evidence, Experian's decision to withhold is prejudicial and unwarranted.

### A.    The DRDD is plainly responsive to Plaintiff's written discovery requests.

On September 19, 2025, Experian produced responses to Plaintiff's written requests for production of documents. *See* App. 1-25, Ex. 1. Within those requests, Plaintiff clearly sought documents containing Experian's procedures for compliance with § 1681e(b): "REQUEST NO. 38: Produce your current set of policies and procedures, in whatever format they currently exist, for compliance with 15 U.S.C. Sections 1681e(b) and 1681i of the FCRA." App. 19.

There is no reasonable argument that the DRDD is not responsive to this request. Experian will argue at summary judgment and at trial – as it consistently does in mixed file cases – that the manner in which Find Consumer matches incoming data to a particular consumer's credit file is reasonable, and that therefore Experian did not violate the FCRA. In this connection, "the manner" in which Find Consumer matches incoming data **is based entirely on the rules**

**enumerated in the DRDD**. In other words, Experian's basic defense in response to Plaintiff's claims under § 1681e(b) boils down to: "the rules in the DRDD are reasonable." Thus, these rules clearly comprise a fundamental aspect of Experian's procedures for compliance with § 1681e(b) and are therefore responsive to Plaintiff's Request for Production No. 38.

> **B.      Experian may not withhold relevant, responsive discovery based on an assertion that the information sought is confidential or proprietary.**

Experian has communicated that one of its bases for withholding the DRDD is an assertion that the information contained therein is confidential and proprietary. *See* App. 28, Ex. 2, Declaration of Youssef Hammoud ("Hammoud Decl."), at ¶ 6.a. However, this is not a valid basis for withholding a document that is relevant and responsive in discovery.

The authority in this area is not complex. A party may not withhold discovery based solely on a contention that the discovery being sought is confidential. *Hunsinger*, 2014 U.S. Dist. LEXIS 3840, at *4. When a party believes that a document is properly designated as confidential, the Federal Rules of Civil Procedure are clear that the proper course of action is to seek a protective order. *See* Fed. R. Civ. P. 26(c)(1)(G) (emphasis added) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: […] (G) requiring that a trade secret **or other confidential research, development, or commercial information** not be revealed or be revealed only in a specified way."). Thus, if Experian believes that the information contained in the DRDD is confidential, Experian has a mechanism available to it to secure protection of this confidential information by way of a protective order.

Moreover, since the Court weighed in on the Parties' previous disputes (*see*, e.g., Doc. 71), the Parties have taken the Court's edict to heart, have worked with one another in good faith, and are presently finalizing terms to enter into an agreed upon private confidentiality agreement.

Experian has also agreed to produce hundreds of pages of documents Experian contends are confidential and has done so subject to private agreements with the undersigned relating to confidentiality. In other words, beyond the mechanism of moving for a protective order, Experian could also produce the DRDD and designate it confidential under the Parties forthcoming agreement, or via an agreement with the undersigned like was done for hundreds of other pages of documents.

The Federal Rules are clear that a party may not simply refuse to produce a document because it is confidential. Accordingly, Experian's objection relating to the DRDD containing confidential and proprietary information is insufficient to justify Experian's refusal to produce this relevant, responsive document, and should be overruled.

> **C.    Find Consumer's rules make up a substantial portion of Experian's defense to Plaintiff's claims under § 1681e(b) and are, therefore, directly relevant.**

As the party resisting discovery, Experian bears the burden to specify why the discovery sought is either not relevant or demonstrate that it fails the proportionality requirement. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 476 (N.D. Tex. 2005). Experian can do neither.

Plaintiff's claims under § 1681e(b) require Plaintiff to prove at trial that Experian reported inaccurate information about Plaintiff and that the inaccuracy resulted from Experian's failure to follow reasonable procedures to assure maximum possible accuracy. *See Zala v. Trans Union, LLC*, Civil Action No. 3:99-CV-0399-D, 2001 U.S. Dist. LEXIS 549, at *8-9 (N.D. Tex. Jan. 17, 2001) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)). Therefore, there is no question that the procedures that **caused** the inaccuracy to appear in Plaintiff's credit file are directly relevant to both Plaintiff's claims and Experian's defenses.

Experian's defense is, in short, that the procedures that caused the inaccuracy at issue in

this litigation to occur are reasonable. Experian does not dispute that the Rushmore account at issue in this litigation related to a mortgage loan held by Plaintiff's father rather than Plaintiff. In other words, Experian concedes that its reporting was inaccurate. Thus, the primary issue in contention with respect to Plaintiff's § 1681e(b) claims is whether: (1) Experian reported the inaccurate information because Experian's procedures are unreasonable; or (2) Experian reported the inaccurate information **in spite of** Experian's procedures being reasonable. The answer to this question is directly determinative of liability in this case.

Find Consumer operates according to a series of rules which evaluates and compares each data payload received by Experian to the data Experian currently has on file within its database. After application of these rules, Find Consumer identifies all potentially matching credit files and returns its findings to a separate Experian process, which ultimately associates the credit data with a particular consumer's credit file. Because of this sequence of events, the Find Consumer rules make up a substantial portion of Experian's defense to Plaintiff's claims under § 1681e(b).

As noted above, Experian will argue in this case that the manner in which Find Consumer matches incoming data to a particular consumer's credit file – and the manner in which Find Consumer matched the Rushmore account to Plaintiff's credit file – is reasonable, and that therefore Experian did not violate § 1681e(b). The precise manner in which Find Consumer performs its matching of incoming data is entirely based on the rules which are enumerated in the DRDD. In short, Experian's entire defense as to the reasonableness of its matching procedures directly refers to the Find Consumer rules in the DRDD.

Experian makes this argument in every single mixed file case and intends to do so in **this** case. Indeed, the opinions disclosed in Experian's "expert" report – signed by an Experian

7

employee who acts as Experian's 30(b)(6) witness in other cases – are that Experian's procedures for matching credit data to a consumer's credit file are reasonable. *See* App. 39, Ex. 3 (stating Methvin's opinion that "Experian's procedures for assembling consumer credit files utilize all available identifiers for a consumer and are reasonable. The procedures that Experian used to assemble Plaintiff's credit file were reasonable.").

Notably, Experian has already **confirmed** that it intends to specifically argue in this case that the rules within the DRDD are designed to, and in fact do, result in maximum possible accuracy of the consumer credit information that Experian reports within consumer reports. When Plaintiff filed his original Motion to Compel, the Court ordered the Parties to meet and confer in good faith to resolve this dispute to provide the Parties with "a final opportunity to resolve this motion without Court intervention." Doc. 93 at 1. During those discussions, Experian communicated unequivocally that it would not produce the DRDD absent a Court Order; accordingly, Plaintiff endeavored to consider alternatives which would address Experian's concerns relating to disclosure of the DRDD while also addressing Plaintiff's concerns relating to prejudice. Specifically, Plaintiff communicated the concerns detailed herein – namely, that Experian's defense explicitly relies on the rules enumerated within the DRDD, meaning non-disclosure of the DRDD would materially prejudice Plaintiff by rendering him unable to respond to a substantial portion of Experian's defense. In an effort to address these competing concerns, Plaintiff proposed a stipulation between the Parties wherein Plaintiff would withdraw the request for production of the DRDD if Experian would agree that it would not argue that the rules in the DRDD achieve maximum possible accuracy. *See* App. 66, Ex. 4. Experian would not agree to this stipulation while also conceding that the requested stipulation was highly relevant to the facts of this case. App. 64, Ex. 4. In short, Experian confirmed that:

(1) Experian intends to explicitly rely on the rules contained in the DRDD in arguing that its procedures are reasonable and assure maximum possible accuracy; (2) Experian concedes the rules in the DRDD are relevant to the facts at issue in this case; but (3) Experian will not agree to allow Plaintiff to evaluate these rules that Experian intends to rely upon for its primary defense.

Denying Plaintiff discovery relating to information that Experian has already confirmed it will rely upon for its primary defense in dispositive motions and at trial would irreparably prejudice Plaintiff. *Magēmā Technology LLC v. Phillips 66*, 153 F.4th 1248, 1251 (Fed. Cir. 2025) is instructive. In *Magēmā*, Magēmā moved to compel testing data; Phillips argued that the testing sought was too dangerous and that, in any event, Magēmā did not need the discovery because it could prove its case with other available information, the Riazi Formula. *Id*. at 1253-54. In reliance on Phillips' argument, the Magistrate Judge denied the motion to compel. *Id*. at 1254. Later, Phillips sought to supplement the record with the very evidence Magēmā had moved to compel, which the district court denied. *Id*. At trial – over Magēmā's objections – Phillips argued that the Riazi Formula was insufficient to prove Magēmā's case. *Id*. The Federal Circuit held that these circumstances demonstrated clear prejudice to Magēmā because the very discovery that it moved to compel – and which the trial court prevented it from securing – was the same discovery that Phillips used to argue its case at trial. *Id*. at 1257-59.

The facts before the Court in this case are far more egregious than those in *Magēmā Technology*. In *Magēmā*, Phillips' argument against producing the discovery sought at least implied that Phillips would not later use the discovery that it opposed disclosing. In this case, Experian cannot and does not make any such representation. There simply is no other basis for Experian to argue that its matching procedures are reasonable beyond the Find Consumer rules. These rules control what data is associated with a consumer's credit file. More to the point, these

9

rules controlled how and why the Rushmore account was associated with Plaintiff's credit file. Experian has **already confirmed** that it will raise this argument and that it will directly rely upon the rules from the DRDD to make this argument. Experian cannot argue out of one side of its mouth that its procedures for matching credit data are reasonable, then argue out of the other side of its mouth that those "reasonable" procedures are not discoverable. It strains all credulity to make such an argument. More importantly, it is irreparably prejudicial to allow Experian to make an argument in its defense which explicitly relies upon the DRDD while simultaneously preventing Plaintiff from securing reasonable discovery into the DRDD.

To date, Experian has not communicated that it believes the Find Consumer rules are irrelevant. Instead, Experian has argued that because the DRDD contains other rules related to Experian's matching algorithm beyond those which would have been used in this case, portions of the DRDD are not relevant to this case. App. 28, Hammoud Decl. at ¶ 6.a. This argument is a non-starter and disjunctive with normative discovery practices in federal court.

The federal courts recognize that documents produced in discovery may contain some information relevant to the litigation and other information that is wholly irrelevant. *See*, e.g., *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ("It is a rare document that contains only relevant information."). Moreover, in many instances, "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Id*. The plain language of Rule 34 further clarifies that parties are not entitled to simply pick-and-choose which pages from documents ought to be produced, requiring that parties produce documents "as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i).

The only real question *vis a vis* relevance is whether a document contains information

that has some possible bearing on a party's claim or defense. The DRDD clearly does. Thus, the remaining question is whether production of the DRDD is proportional to the needs of the case.

**D.     Production of the DRDD is proportional to the needs of the case because: (1) the burden to produce the DRDD is minimal; (2) Experian's defense relies heavily on the rules detailed in the DRDD; (3) Plaintiff has no other avenue to obtain the information sought; (4) Plaintiff has a viable claim for both actual and punitive damages under the FCRA; (5) Plaintiff's claims relate to important questions about Experian's matching procedures; and (6) Experian's access to this information gives it an unfair advantage at trial.**

Because Experian is unable to raise any reasonable argument claiming that the DRDD is irrelevant to either Plaintiff's claims or Experian's defenses, the only conceivable basis for withholding this document would require Experian to meet its burden to show that production of the DRDD is not proportional to the needs of the case. *See Childers v. Rent-A-Car E., Inc.*, No. CV 21-960, 2024 WL 1050501, at *7 (E.D. La. Mar. 11, 2024) ("A party resisting discovery on grounds of proportionality bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the proportionality considerations") (citing *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2023 WL 3687427, at *2 & n.25 (E.D. La. May 26, 2023) (citing *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016)), *on reconsideration in part*, No. 18-7889, 2023 WL 4706200 (E.D. La. July 24, 2023)). Experian cannot meet this burden.

Experian argues that production of the DRDD is not proportional to the needs of the case in this lawsuit because this case involves only a single consumer and because Experian contends that Plaintiff has no evidence of damages. App. 28, Hammoud Decl. at ¶ 6.b. Even before a deep-dive analysis into the relevant factors and case law, these objections are facially erroneous.[1]

---

[1] First, the vast majority of § 1681e(b) cases involve a single consumer, and yet Congress saw fit to enact a statutory scheme intended to protect that single consumer and give them a private right

11

Experian also argues that Plaintiff's request is duplicative of other discovery and that the information being sought can be achieved through other means. App. 28, Hammoud Decl. at ¶ 6.c. As detailed below, this is simply not the case. In fact, Plaintiff **has already sought** – unsuccessfully – to obtain the discovery in question through multiple other means, which has only further confirmed the necessity of production of the DRDD.

Regardless, and as noted above, when evaluating the question of proportionality, multiple factors are considered: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, [6] and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Goodson*, 2023 U.S. Dist. LEXIS 152075, at *7-8 (citations omitted).

Experian's objections effectively relate to three of these elements. Experian's objection that this is a single-consumer FCRA action implies an argument relating to the importance of the issues at stake in this action. Experian's objection that Plaintiff has allegedly produced no evidence of damages clearly relates to the amount in controversy. Experian's objection that the discovery sought is duplicative and that Plaintiff could obtain the discovery through less obtrusive means relates to the parties' relative access to relevant information. However, analysis of each of these elements – and the others making up this inquiry – show that the discovery sought by Plaintiff is unquestionably proportional to the needs of the case.

      *i.*      *Burden or Expense.*

The simplest of these factors to analyze is the question of burden or expense. The document in question is a single Microsoft Word document that Experian employees can readily

---

of action. Experian is not entitled to second guess Congress' decision. Second, if a defendant could avoid discovery by simply asserting its opinion that the plaintiff's damages evidence is lacking, the civil judicial system would cease to operate.

access. App. 28, Hammoud Decl. at ¶ 4. The entire burden imposed upon Experian in producing this document would involve an Experian employee navigating to the appropriate folder on their computer and dragging the Word file into an email directed to Experian's counsel. The entire process would take no more than a few minutes and would involve no expense of any kind.

This factor weighs in favor of proportionality.

### ii.     Importance of Discovery in Resolving Issues.

Next, the proportionality analysis examines the importance of the disputed discovery in resolving issues in the case. As noted above, Experian's entire defense in response to Plaintiff's claims under § 1681e(b) is that its procedures are reasonable and that the inaccurate information Experian reported with respect to Plaintiff was reported in spite of those allegedly reasonable procedures. The specific procedures that Experian argues are "reasonable" are those which analyzed data provided by Rushmore to Experian, then erroneously determined that the correct credit file to associate the Rushmore account with was the one belonging to Plaintiff. The procedures to which this argument refers are the Find Consumer rules that Plaintiff seeks, and those rules are detailed within the DRDD.

The question about how the Find Consumer rules operate is directly relevant to resolving the question of the reasonableness – or lack thereof – with respect to Experian's procedures for compliance with § 1681e(b). Without the benefit of actually knowing how these rules operate, the entirety of Plaintiff's argument that these rules are unreasonable is based on circumstantial evidence only, derived from the obviousness of the ultimate error that Experian made when associating an account belonging to Plaintiff's father with Plaintiff's credit file. This is in no way sufficient when Experian intends to produce a corporate representative and "expert" witness at trial who will both speak at length about how "reasonable" Experian's procedures for matching credit information to a consumer's credit file are. This Court should not allow Experian to

simultaneously argue that its procedures are reasonable but refuse to allow discovery of those procedures, particularly when this discovery will resolve a central issue in this case. Experian is not entitled to use its procedures as both a sword and a shield.

This factor weighs in favor of proportionality.

### iii.      Parties' Access to Relevant Information.

Other than obtaining the DRDD to review the rules detailed therein, Plaintiff has no other avenue to obtain this necessary, relevant information. Experian has objected, arguing that the discovery Plaintiff seeks is duplicative of other discovery and that Plaintiff could obtain the information through less intrusive means. App. 28, Hammoud Decl. at ¶ 6.c. However, Plaintiff has **already** sought to obtain the relevant information via multiple different means, all of which has been unsuccessful thus far.

Plaintiff sought information about Find Consumer's rules during Experian's 30(b)(6) deposition; that deponent could not provide any substantive information about how the rules operate. More recently, Plaintiff deposed a witness named Tim Sumida. Mr. Sumida was employed by Experian for more than 40 years, took part in the creation of Find Consumer, and whose name is listed as "Inventor" on patents describing Find Consumer. Beyond generalities, Mr. Sumida was unable to testify about specific rules, repeatedly testifying that he did not know the rules from memory and that the only way to truly understand those rules is by reviewing the DRDD. App. 28, Hammoud Decl. at ¶ 4.

In short, Plaintiff has already undertaken efforts to obtain the information being sought and those efforts made clear that the DRDD is the only reasonable source for obtaining this information. There is no question Experian has access to the DRDD – it is a document maintained solely by Experian and accessible solely to Experian. Plaintiff has no other reasonable means for obtaining this information. Simply put, Experian is "the only part[y] with

14

the knowledge and access to documents that are responsive to discovery requests, it is [its] responsibility to fully respond to the requests in compliance with the Federal Rules of Civil Procedure…" *Maggette v. BL Dev. Corp.*, No. CIV.A. 2:07CV181-M-A, 2009 WL 1767091, at *1 (N.D. Miss. June 18, 2009) (imposing sanctions and noting that further "failure […] will result in additional sanctions.").

This factor weighs in favor of proportionality.

      *iv.*    *Amount in Controversy.*

The primary (and recurring) objection Experian has repeatedly raised in response to Plaintiff's discovery requests is Experian's argument that, in Experian's view, Plaintiff has not produced any evidence of damages. There are numerous problems with Experian's objections.

The first problem is that Experian is wrong. Plaintiff **has** produced evidence of substantial damages. Plaintiff testified at length in his deposition about the emotional distress that he sustained relating to Experian's inaccurate reporting which caused Plaintiff such a severe reaction that Plaintiff wound up in an emergency room. Experian also deposed Plaintiff's fiancé, who corroborated Plaintiff's testimony and provided additional perspective relating to Plaintiff's damages. Experian knows this, since Experian is the party who took all of the relevant testimony.

During discovery, Experian's **argument** about the limitations of Plaintiff's actual damages is an unreasonable basis to withhold discovery. Experian is well-aware of the **many** money judgments that have been awarded to consumers for emotional distress damages alone. *See e.g. Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($50,000 in actual damages awarded in absence of testimony other than worry, stress and anxiety); *Boris v. Choicepoint Servs*, 249 F. Supp. 2d 851 (W.D. Ky. 2003) ($197,000 emotional distress damages remitted to $100,000 based upon inaccurate reporting by consumer reporting agency. $250,000 punitive damage award sustained); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th

Cir. 1995) (jury awarded $275,000 for humiliation and mental distress damages available under FCRA following remand); *Sloane v. Equifax*, 510 F.3d 495 (4th Cir. 2007) (affirming a district court's award of $106,000 for economic losses and reducing emotional distress damages from $245,000 to $150,000 for identity theft reinvestigation claim).

The second problem is that Experian ignores Plaintiff's claims that Experian willfully violated the FCRA. As the Court knows, willful violations of the FCRA entitle prevailing consumers to punitive damages, **even in the absence of actual damages**. *See* 15 U.S.C. § 1681n; *see also*, *Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1155 (11th Cir. 2024); *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 499-500 (8th Cir. 2014), *abrogation on other grounds recognized by Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957 (8th Cir. 2019) ("[W]e cannot locate a single case that interprets the [FCRA's] liability provision as requiring something more than a statutory violation in order to recover 'damages of not less than $100 and not more than $1,000.'"); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("[T]he Fair Credit Reporting Act provide[s] for modest damages without proof of injury."); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1110-11 (9th Cir. 2017) ("The statute gives consumers [...] the right to sue (and to recover statutory damages) for willful violations even if the consumer cannot show that the violation caused him to sustain any actual damages."); *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) ("Under [section] 1681n(a), however, the consumer need not prove actual damages if the violation is willful […].").

Thus, even if Experian were correct that Plaintiff had produced no evidence of damages (it is not), Plaintiff maintains an avenue to recover punitive damages, nonetheless. Furthermore, as Plaintiff will demonstrate in his forthcoming dispositive motion, Experian's violations at issue in this case resulted from Experian's total failure to follow its own reinvestigation procedures,

16

which courts have held is evidence of a willful violation of the FCRA. *See Price v. Sallie Mae, Inc.*, No. 1:08-CV-2712-CAP-ECS, 2010 U.S. Dist. LEXIS 155881, at *14-15 (N.D. Ga. Aug. 23, 2010)  (citing *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1271-72 (S.D. Fla. 2009)) (emphasis added) ("Thus, in order to show willful or reckless conduct under FCRA, a Plaintiff must show that a defendant 'fail[ed] to carry out any obligation under the FCRA by, for example, (1) committing a[] FCRA violation that amounts to more than an isolated  instance of human error which was promptly cured; (2) engaging in misrepresentation or concealment; or (3) **failing to follow its own FCRA reinvestigation procedures**.'").

This factor weighs in favor of proportionality.

       v.      *Importance of Issues at Stake.*

Giving Experian the benefit of the doubt, its other objection about this case involving a single consumer may be an objection relating to the importance of the issues at stake in this litigation. In other words, Experian may intend to argue that the issues in this litigation have no broader implications beyond Plaintiff. Again, Experian is mistaken.

Experian's procedures – particularly those for matching credit data to a particular consumer's credit file – have been very harmful to consumers for a very long time. However, certain groups of consumers have, unfortunately, borne a larger share of the harm than others. In particular, Experian's procedures routinely harm Hispanic consumers in precisely the same way that Experian's procedures harmed Plaintiff in this case. To that end, the undersigned's law firm has been retained by numerous Hispanic consumers in the past 3 years alone who have been the victims of mixed files similar to that of Plaintiff. *See Antonio Rodriguez Portal v. Experian Information Solutions, Inc.*, et al., Case No. 1:22-cv-20304 (S.D. Fla. 2022) (mixing plaintiff with an individual named "Anthony Rodriguez"); *Calixto Efrain Martinez Miralles v. Experian Information Solutions, Inc., et al.*, Case No. 1:24-cv-01205 (W.D. Tex. 2024) (mixing plaintiff

with an individual named "Calix Marys Martinez"); *Jose Rodolfo Mejia Alvarado v. Experian Information Solutions, Inc., et al.*, Case No. 8:24-cv-02452 (D. Md. 2024) (mixing plaintiff with an individual named "Jose Fredy Oliva Mejia"); *Javier Morales Vera v. Experian Information Solutions, Inc.*, Case No. 1:24-cv-00696 (N.D. Ga. 2024) (mixing plaintiff with an individual named "Santiago Morales Vera"); *Juanita Rivas Martinez v. Experian Information Solutions, Inc.*, et al., Case No. 6:23-cv-01264 (D. Kan. 2023) (mixing plaintiff with an individual named "Juana Estrada"); *Agustin Efrain Rivera-Fernandez v. Experian Information Solutions, Inc., et al.*, Case No. 6:23-cv-01408 (M.D. Fla. 2023) (mixing plaintiff with an individual named "Agustin Felix Rivera Fernandez"); *Emmanuel Flores Barboza v. Experian Information Solutions, Inc.*, Case No. 2:22-cv-02615 (C.D. Cal. 2022) (mixing plaintiff with an individual named "Emmanuel Flores Sampiero"); *Alex Alvarex Garcia v. Experian Information Solutions Inc.*, Case No. 5:23-cv-04672 (N.D. Cal. 2023) (mixing plaintiff with an individual named "Alex Garcia"); *Ronald Garcia Delgado v. Experian Information Solutions, Inc.*, Case No. 4:24-cv-00637 (E.D. Tex. 2024) (mixing plaintiff with an individual named "Ronald Garcia Diaz"); *Mariana Santamaria Rivas v. Experian Information Solutions, Inc., et al.*, Case No. 1:25-cv-00818 (D. Md. 2025) (mixing plaintiff with an individual named "Maria Rivas Alvarenga"); *Jose Del Rosario Hernandez Franco v. Experian Information Solutions, Inc., et. al.*, Case No. 5:25-cv-05068 (W.D. Ark. 2025) (mixing Plaintiff with an individual named "Josue Hernandez Ramirez").

It is true each of these cases involves a "single consumer." However, grouped together, the bigger picture – and, accordingly, the importance of the issues at stake – becomes very clear. Experian's harmful procedures for consumer reporting routinely harm Hispanic consumers, and the Find Consumer rules will undoubtedly shed light on why these systemic issues exist.

18

This factor weighs in favor of proportionality.

   vi.  *Parties' Resources.*

Finally, with respect to the Parties' resources, Experian has an advantage both with respect to monetary resources and institutional resources. Plaintiff is a single consumer; Experian is a multiple-billion-dollar, multinational corporation. There is no question that Experian is advantaged in every conceivable way with respect to the financial resources available to it versus those available to Plaintiff.

However, Experian also has the benefit of disproportionate institutional resources, meaning access to the relevant information. Experian's policies and procedures are not a matter of public record, meaning Plaintiff's access to information that bears on Plaintiff's claims and Experian's defenses is, by definition, limited to information already known to Plaintiff's counsel and information voluntarily identified and disclosed by Experian. Experian has the benefit of knowing what documents exist and choosing whether to identify those documents at all. *See Maggette*, 2009 WL 1767091, at *1 (noting that where a party has sole "access to documents that are responsive to discovery requests, it is [its] responsibility to fully respond to the requests…").

More importantly, Experian has the benefit of knowing what is in its procedure documents, including the DRDD. Experian can raise arguments about what its procedures can and cannot do, including arguments about why Experian's procedures for matching credit data to a consumer's credit file – the Find Consumer rules – are reasonable. Without the benefit of the DRDD, Plaintiff has no ability to materially contradict Experian's assertions. Experian asks the Court to allow it to simply tell Plaintiff and/or the jury what its procedures are, instead of producing **evidence** of those procedures. As another district court once told Experian:

> a lawsuit involves a lot more "show me" than "tell me." "Move along, there's nothing to see here," is simply not a very convincing stance. If plaintiffs simply had to believe defendants' and their attorneys' assurances that defendants had

19

done nothing wrong, there would be a lot of judges looking for other employment. *Stagger v. Experian Info. Sols., Inc.*, No. 21 C 2001, 2021 WL 5299791, at *3 (N.D. Ill. Nov. 15, 2021).

Simply put, without the benefit of the DRDD, Plaintiff, the Court, and the jury will be unable to confirm whether the Find Consumer rules actually are reasonable or even whether they operate as Experian claims they do.

This factor, like all of the others, weighs in favor of proportionality.

### E.    Experian has not satisfied its burden to show good cause.

As a matter of law, a party seeking protection under Federal Rule of Civil Procedure 26(c) bears the burden of making a "particular and specific demonstration of fact" showing good cause; "stereotyped and conclusory statements" do not suffice. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306-08 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)) (citing 8 Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2035, at 483-86 (2d ed.1994)). "[B]road allegations of harm, **unsubstantiated by specific examples**, are insufficient to justify issuance of a protective order." *ION, Inc. v. Sercel, Inc.*, 5:06-cv-236, 2009 WL 10677595, at *2 (E.D. Tex. May 20, 2009) (emphasis added) (quoting *AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 78 (Fed. Cl. 2008)).

During the meet and confer process, Experian further explained that its position is that disclosure of the DRDD would allow competitors or potential competitors to reconstruct Experian's algorithm by copying the DRDD. Experian contends the harms that may result from this disclosure include: (1) the loss of the economic value that Experian has invested in developing its algorithm; (2) the loss of Experian's competitive advantage in the marketplace for credit reporting because competitors could use the same matching techniques that Experian does.

20

First, Experian's position is fundamentally flawed because it suffers from the *petitio principii*, or "begging the question" fallacy. Specifically, Experian's argument presupposes the very proposition it must prove – namely, that the DRDD would enable a competitor to reconstruct Experian's algorithm and thereby cause it competitive harm. Experian has never produced the DRDD, so neither Plaintiff nor the Court can test whether the document contains algorithmic "blueprints," whether the hypothetical risk is realistic, or whether sensitive content could be addressed through tailored safeguards. Instead, Experian asks the Court to accept its conclusion on blind faith and use that untested conclusion as the reason to deny Plaintiff relevant, necessary discovery into a central facet of Experian's primary defense. Moreover, the limited evidence in the record about the actual contents of the DRDD makes clear that this presupposition is demonstrably incorrect. Sumida testified that the DRDD "doesn't contain code." *See* App. 69, Ex. 5, Deposition Transcript of Timothy Sumida ("Sumida Depo."), 78:14-20. Thus, even if a competitor acquired the DRDD, it would only learn rules governing aspects of Find Consumer's operation rather than the code that makes up Find Consumer. Experian's claim that a competitor could "reconstruct" its algorithm from DRDD "rules" containing no code is akin to Coca-Cola fearing a rival could recreate its flagship soda by learning the machine settings for mixing ingredients without any knowledge of what the ingredients are.

Second, Experian's argument also boldly presupposes that Experian's competitors would even attempt to reconstruct Experian's algorithm even if they had access to the DRDD rules **and the entire code**. Considering that Experian is the only major credit bureau that was unable to tell the difference between Plaintiff and his father, it seems far more likely that Experian's competitors would only be interested in the DRDD insofar as to make note of what **not** to do.

Third, Experian's argument is exactly the sort of conclusory, speculative "could happen"

21

narrative that fails to satisfy its burden to justify withholding relevant discovery. Experian has offered no concrete, document-specific explanation for **how** the DRDD would enable anybody to reconstruct an algorithm consisting of code **without the code**. Instead, Experian's arguments, to date, have consisted of no more than ominous hypotheticals without any evidentiary support, no identification of what portions of the DRDD supposedly function as a blueprint, and no reasoned analysis showing that disclosure of the DRDD in this case could or would translate into market harm. *See In re Adkins Supply, Inc.*, 555 B.R. 579, 594 (Bankr. N.D. Tex. 2016) (emphasis added) (citing *In re Terra*, 134 F.3d at 306-307) ("Courts that enter a protective order 'solely on the basis of stereotyped and conclusory statements,' without the substantiation of "particular and specific demonstration of fact" **through affidavits or other evidence**, abuse their discretion."). Rule 26 does not permit a party to defeat discovery by asserting abstract competitive injuries untethered to any specific facts; if this were the case, virtually every company in the country could withhold core documents from discovery in every single case by vague alluding to competitive harms. *See*, e.g., *Allen v. City of N.Y.*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (holding "generalized and unsupported claims of harm that might result from disclosure" was insufficient to show good cause); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 312MD02385DRHSCW, 2014 WL 321656, at *4 (S.D. Ill. Jan. 29, 2014) ("vague claims about harm that might result" are insufficient to show good cause); *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (citation omitted) ("Conclusory statements—including 'broad allegations of potential harm' or competitive injury—are insufficient to meet the good cause standard."); *FemtoMetrix Inc. v. Huang*, No. 8:22-CV-01624-JWH-KES, 2024 WL 3915136, at *2 (C.D. Cal. July 19, 2024) (citation omitted) ("Generally claiming that publishing a document 'would cause competitive harm' does

not establish good cause without some further explanation of how/why."); *Volm Companies, Inc. v. Kwik Lok Corp.*, No. 19-C-244, 2019 WL 13218380, at \*10 (E.D. Wis. July 8, 2019) ("a broad assertion about being placed at a competitive disadvantage is insufficient to demonstrate good cause."); *United States v. Panhandle E. Corp.*, 118 F.R.D. 346, 350 (D. Del. 1988) ("broad allegations of economic injury, without more, are insufficient to show good cause.").

Even if Experian could show that limited portions of the DRDD are competitively sensitive – it has not – the Federal Rules supply Experian with a remedy: production subject to narrowly tailored protections, not wholesale non-disclosure. Experian's position effectively equates producing the DRDD in this litigation – even designated as "Confidential" – with sending the entire DRDD directly to the engineering teams of Equifax and Trans Union. No competitor of Experian's is involved in this case. The "competitor" scenario Experian invokes is a fear of its own creation. More importantly, Experian's bald assertion that competitors could "use the same matching techniques" is particularly implausible given that "techniques" are not implemented by aspirational rules alone; they depend upon underlying code, data architecture, system constraints, and other information that the DRDD will not provide. In short, Experian is effectively asking the Court to accept the sweeping premise that the DRDD will irreparably harm Experian and to do so based only on Experian's say-so. This circularity is not good cause; it is an attempt to convert generalized business concerns into a veto over relevant discovery.

In short, Experian has never produced any evidentiary support for its conclusory assertions of harm were the DRDD to be produced in this case. There is nothing in the record which would allow the Court to evaluate Experian's contentions and the limited evidence that does exist via Sumida's testimony demonstrates that the harms Experian is concerned about have no reasonable basis in fact since the DRDD contains no code and nothing from which a

23

competitor could reconstruct Experian's proprietary algorithm.

### F.        Plaintiff is entitled to sanctions.

Sanctions for a party's discovery offenses are mandatory and automatic unless the party's conduct is "substantially justified" or "other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(ii) and (iii). Here, there is no legitimate justification for Experian's position. As detailed above, there is no justification for Experian's refusal to produce this relevant and responsive document based on Experian's contention that such documents are confidential, and Experian's objections concerning relevance and proportionality are entirely misguided or otherwise inapplicable. This Court should not allow Experian to continue its pattern of picking and choosing which rules it will follow in discovery and which it will not. There is no doubt that the DRDD is relevant to the claims and defenses at issue in this litigation, and there is no real argument that its production is proportional to the needs of the case.

Accordingly, Plaintiff respectfully requests that the Court enter an Order on this issue: (1) finding that sanctions are appropriate and that Experian is obligated to pay Plaintiff's attorneys' fees incurred in connection with this discovery dispute; and (2) directing Plaintiff to file an application for fees.

## IV.    <u>CONCLUSION</u>

The DRDD is plainly responsive to Plaintiff's written discovery requests, directly relevant to Experian's core defenses under 15 U.S.C. § 1681e(b), and its production is overwhelmingly proportional to the needs of this case under Rule 26(b)(1). Experian's reliance on confidentiality as a basis to withhold the DRDD is improper under the Federal Rules of Civil Procedure and the authority cited herein, especially where less restrictive means, like a protective order or the Parties' private confidentiality agreement, are readily available. Moreover, Experian's exclusive access to the DRDD gives it an unfair tactical advantage on arguably the

most important issue in this litigation – whether its matching procedures are reasonable. Neither Plaintiff nor the trier of fact can fairly evaluate this case without production of the DRDD. Because Experian's position lacks substantial justification, Rule 37 mandates an award of Plaintiff's reasonable attorneys' fees incurred in bringing this Motion.

Accordingly, Plaintiff respectfully requests that the Court enter an Order: (1) instructing Experian to produce the Find Consumer Detail Requirements and Design Document in its entirety; (2) ordering Experian to pay Plaintiff's reasonable attorneys' incurred in drafting and litigating the Motion; and (3) instructing Plaintiff to file a fee petition detailing such fees.

RESPECTFULLY SUBMITTED on December 19, 2025.

By: */s/ James Ristvedt*
James Ristvedt, AZ Bar #035938
**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, AZ 85258
E: jristvedt@consumerjustice.com
T: (480) 626-1956
F: (480) 613-7733

Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorneys for Plaintiff,*
*Victor Manuel Ramirez Najera*

25