**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| VICTOR MANUEL RAMIREZ NAJERA,<br><br>                    Plaintiff,<br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; APPFOLIO, INC.; and NATIONSTAR MORTGAGE LLC d/b/a RUSHMORE SERVICING.<br><br>                    Defendant. | Case No.: 4:25-cv-443 |

**APPENDIX IN SUPPORT OF PLAINTIFF'S**
**AMENDED MOTION TO COMPEL DISCOVERY**

| EXHIBIT | DESCRIPTION | PAGE NO. |
|---|---|---|
| 1 | Experian's Responses to Plaintiff's First Set of Requests for Production | App. 01-025 |
| 2 | Declaration of Youssef Hammoud | App. 026-029 |
| 3 | Experian's Rule 26 Expert Witness Disclosures and Expert Report | App. 030-062 |
| 4 | Emails Between Counsel Concerning Find Consumer DRDD Proposal | App. 063-066 |
| 5 | Excerpts of Deposition Transcript of Timothy Sumida | App. 067-069 |

RESPECTFULLY SUBMITTED on December 19, 2025.

By: */s/ James Ristvedt*
James Ristvedt, AZ Bar #035938

1

**CONSUMER JUSTICE LAW FIRM PLC**
8095 N. 85th Way
Scottsdale, AZ 85258
E: jristvedt@consumerjustice.com
T: (480) 626-1956
F: (480) 613-7733

Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorneys for Plaintiff,*
*Victor Manuel Ramirez Najera*

2

APPENDIX II

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Victor Manuel Ramirez Najera,<br><br>　　　　*Plaintiff,*<br>　　v.<br><br>Experian Information Solutions, Inc.;<br>Appfolio, Inc.; and Nationstar Mortgage LLC<br>d/b/a Rushmore Servicing,<br><br>　　　　*Defendants*. | CASE NO. 4:25-cv-00443-P |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.'S OBJECTIONS AND
RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO EXPERIAN**

Defendant Experian Information Solutions, Inc. ("Experian") hereby responds to the

Requests for Production ("Requests") served by Plaintiff Victor Manuel Ramirez Najera

("Plaintiff").

**PRELIMINARY STATEMENT**

Although Experian has made a diligent and good faith effort to gather the information with

which to respond to Plaintiff's Requests, discovery in this matter is ongoing, and Experian has not

yet completed its investigation of this matter. For those reasons, Experian's responses may be

incomplete. Accordingly, all of the following responses are given without prejudice to and with

the express reservation of Experian's right to supplement or modify its responses to the extent

required by applicable law to incorporate later discovered information, and to rely upon any and

all such information at trial or otherwise. Likewise, Experian shall not be prejudiced if any of its

present responses are based on an incomplete knowledge or comprehension of the facts, events, or

occurrences involved in this matter.

Experian also has responded to Plaintiff's Requests based on its best, good faith understanding and interpretation of each item therein. Accordingly, if Plaintiff subsequently asserts a different interpretation than that presently understood by Experian, then Experian reserves the right to supplement or amend these responses.

## LIMITATIONS AND GENERAL OBJECTIONS

1. Experian objects to Plaintiff's Requests on the grounds that they are overbroad, unduly burdensome, and purport to require Experian to perform tasks beyond its obligations under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Texas. Experian will respond pursuant to its obligations under the Federal Rules of Civil Procedure and the Local Rules.

2. **Time Frame.** Experian objects to Plaintiff's Requests to the extent they are unlimited or ambiguous as to time and/or seek documents or information beyond the applicable two-year statute of limitations. *See* 15 U.S.C. § 1681p. Because Plaintiff's Requests seek information from four years prior to filing the action and through culmination of the action, they are vague, overly broad, unduly burdensome, and seek documents or information that are neither relevant to any party's claims or defenses nor proportional to the needs of the case.

3. **Trade Secret.** Experian objects generally to Plaintiff's Requests to the extent that they seek highly confidential, proprietary or otherwise commercially sensitive information or trade secrets.

4. **Attorney-Client Privilege, Work Product Doctrine, and Other Applicable Privileges.** Plaintiff's Requests do not, by their terms, exclude privileged or otherwise protected communications from the documents and/or information sought. Experian therefore objects to each Request to the extent each seeks disclosure of any documents or information that are privileged or otherwise protected from discovery, including documents or information protected

2

by the attorney-client privilege, the work-product doctrine, privileges applicable to any consumer, and/or any other applicable privilege or protection.  Such material is not properly discoverable under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure.  Experian's privileged communications and work-product will not be included in Experian's discovery responses.  The response to any Request by Experian is not intended to be and shall not be deemed a waiver of any applicable privilege.

5.      **Lack of Limitation as to Time Resulting in Seeking Documents and Information Protected by Attorney-Client Privilege and Work Product Doctrine.**  Experian objects to Plaintiff's Requests to the extent they seek documents or information concerning contacts between attorney and client during the pendency of this litigation, particularly because Plaintiff's Requests fail to set forth any time limitation and therefore could be construed to seek documents and information up through and including trial.  Experian deems all attorney work product and privileged communications not intended to be within the scope of Plaintiff's Interrogatories and accordingly will not, and does not intend these responses to, waive the privilege afforded such privileged communications.  For this reason, Experian will not prepare a privilege log for such communications occurring during the pendency of this litigation.

6.      **Possession, Custody, and Control.**  Experian objects to Plaintiff's Requests to the extent they seek documents and information that are not in Experian's possession, custody, or control.  Specifically, Plaintiff's discovery requests purport to require Experian to answer questions for which Experian does not have information.  The burden of retrieving information not within Experian's possession, custody, or control is the same for Plaintiff as that for Experian.

7.      **Right to Supplement.**  Experian reserves the right to supplement its answers to these Requests pursuant to Fed. R. Civ. P. 26(e).

3

8.      Experian hereby incorporates the foregoing Limitations and Objections into each of the following Specific Objections and Responses, which are subject to and without waiver of the foregoing Limitations and Objections.

## SPECIFIC OBJECTIONS & RESPONSES

**REQUEST NO. 1:**   Produce all documents identified in, reviewed, or otherwise used in drafting Your answers to Interrogatories propounded by Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "documents."  Experian interprets this Request to request documents associated with Plaintiff's dispute of the Rushmore mortgage tradeline.  Experian also objects that this Request is overly broad an unduly burdensome because it requests "all" documents.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 2:**  Produce all documents identified in, reviewed, or otherwise used in drafting Your answers to Admission Requests propounded by Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "documents."  Experian interprets this Request to request documents associated with Plaintiff's dispute of the Rushmore mortgage tradeline.  Experian also objects that this Request is overly broad an unduly burdensome because it requests "all" documents.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

4

**REQUEST NO. 3:**  Produce all documents identified in, described, reviewed, or otherwise used in drafting Your Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) and any supplements thereto in this matter.

**RESPONSE:**   In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "documents." Experian interprets this Request to request documents associated with Plaintiff's dispute of the Rushmore mortgage tradeline.  Experian also objects that this Request is overly broad an unduly burdensome because it requests "all" documents.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 4:**  Produce all documents relating to or which You contend support any of Your Affirmative Defenses or factual defenses raised by You in this matter.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "documents," "contend," and "support."  Experian interprets this Request to request documents associated with Plaintiff's dispute of the Rushmore mortgage tradeline.  Experian also objects that this Request is overly broad an unduly burdensome because it requests "all" documents.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 5:**  Produce all expert reports and supplements thereto which have been prepared in connection with this matter.

**RESPONSE:**  Subject to and without waiver of its objections, Experian will produce its expert report as required by the Court.

5

**REQUEST NO. 6:**  Produce copies of any statements or subpoena responses you have taken and/or received from any third party in any way connected to this matter.

**RESPONSE:**  Subject to and without waiver of its objections, Experian does not possess any responsive documents.

**REQUEST NO. 7:**  Produce all insurance agreements under which an insurance company may be liable in whole or in part for a judgment in this matter or may be responsible for indemnifying or reimbursing you or any other entity for payments made to satisfy such a judgment.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "insurance agreements," "liable," "responsible," "indemnifying," reimbursing," and "satisfy."

Moreover, as noted in its Rule 26(a)(1) initial disclosure statement, based on Experian's present insurance and applicable deductibles, no insurance carrier would be liable to satisfy part or all of any likely judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy any likely judgment.  Consequently, this request appears to seek documents that have little or no relation to the material facts at issue in this case.  In addition, this request is not proportional to the needs of this case as currently written.

Experian further objects to the extent that the Request seeks confidential, proprietary and/or trade secret information.  Experian also objects to this Request to the extent it calls for the disclosure of documents or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

Subject to and without waiving of its objections, Experian responds as follows: Experian incorporates as if stated herein its Initial Disclosures, which note that, "[b]ased on Experian's present insurance and applicable deductibles, no insurance carrier would be liable to satisfy part or all of any likely judgment which may be entered in this action, or to indemnify or reimburse

6

for payments made to satisfy any likely judgment." Consequently, Experian does not expect to produce documents in response to this request.

**REQUEST NO. 8:** Produce all contracts and employment agreements, including any addenda to the same, which govern Your relationship with all third parties who conduct reinvestigations of consumer disputes pursuant to 15 U.S.C. Section 1681i on Your behalf.

**RESPONSE:** In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "employment agreements," "addenda," "relationship," and "on Your behalf."

Experian further objects to the extent that the Request seeks confidential, proprietary and/or trade secret information. Experian also objects to this Request to the extent it calls for the disclosure of documents or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

Experian also objects because this request seeks document not relevant to the parties claims or defenses. This request appears to seek documents that have little or no relation to the material facts at issue in this case. Experian's contractual relationship with a third party has no bearing on any party's claims or defenses. Experian is liable, if at all, for the actions it takes and the procedures it maintains, regardless of the identity of the Experian employee who took the action or maintains the procedures. Moreover, this request is not proportional to the needs of this case as currently written.

Subject to and without waiver of its objections, Experian does not anticipate producing documents responsive to this request.

APPENDIX 008

**REQUEST NO. 9:**  Produce a list of the names of the individuals, including their contact information, that communicated with Plaintiff during the relevant time period.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "list," "contact information," and "communicated."

Experian also objects because this request seeks document not relevant to the parties claims or defenses.  This request appears to seek documents that have little or no relation to the material facts at issue in this case.  Moreover, this request is not proportional to the needs of this case as currently written.

Experian further objects to the extent this Request asks Experian to create documents not kept in the normal course of business.  Such a Request exceeds Experian's obligations under the Federal Rules.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 10:**  Produce all documents regarding Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents."  The Request is also overbroad in that it request "*all* documents regarding Plaintiff," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 11:**  Produce all documents you intend to introduce at trial.

**RESPONSE:**  No objection.

8

**REQUEST NO. 12:**  Produce a complete copy of all information in Plaintiff's file with You as of the date of this request.

**RESPONSE:**   In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "a complete copy of all information," and "file."  The Request is also overbroad in that it request "*all* information in Plaintiff's," regardless of relevance to the account in dispute.  Experian further objects because this Request is duplicative of Request No. 10.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 13:**  Produce a complete copy of all information in Plaintiff's file as of the date Plaintiff filed Plaintiff's initial complaint.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "a complete copy of all information," and "file."  The Request is also overbroad in that it request "*all* information in Plaintiff's," regardless of relevance to the account in dispute.  Experian further objects because this Request is duplicative of Request Nos. 10 and 12.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 14:**  Produce any and all ACDVs regarding Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "ACDVs."  Experian also objects to this Request on the ground that it is overly burdensome in that its requests "any" and "all" ACDVS, regardless of whether related to this litigation or not.

9

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 15:** Produce any and all AUDs regarding Plaintiff.

**RESPONSE:** In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the term "AUDs." Experian also objects to this Request on the ground that it is overly burdensome in that its requests "any" and "all" AUDs, regardless of whether related to this litigation or not.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 16:** Produce any other document(s) prepared in the course of any reinvestigation of any credit information relating to Plaintiff.

**RESPONSE:** In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "document(s) prepared," "reinvestigation," and "credit information." The Request is also overbroad in that it request "*any* other document(s)," regardless of relevance to the account in dispute. Experian further objects because this Request is duplicative of Request Nos. 10, 12–15.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 17:** Produce any agreement under which NATIONSTAR MORTGAGE LLC d/b/a RUSHMORE SERVICING. ("Furnisher") reported, accessed, or furnished credit information to You.

**RESPONSE:** In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "agreement," "reported," "accessed," "furnished," and "credit information." The Request is also overbroad in that it request "*any* agreement," regardless of relevance to the account in dispute. In addition, this

10

request appears to seek documents that have little or no relation to the material facts at issue in this case.  Indeed, Experian's contractual relationship with a third party has no bearing on any party's claims or defenses.  Moreover, this request is not proportional to the needs of this case as currently written.

Subject to and without waiver of its objections, Experian does not anticipate producing documents responsive to this request.

**REQUEST NO. 18:**  Produce all documents sent by Plaintiff to You.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents" and "sent."  The Request is also overbroad in that it request "all documents," regardless of relevance to the account in dispute.  Experian further objects because this Request is duplicative of Request Nos. 10, 12, and 13.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**RESPONSE:**

**REQUEST NO. 19:**  Produce all documents sent by You to Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents" and "sent."  The Request is also overbroad in that it request "all documents," regardless of relevance to the account in dispute.  Experian further objects because this Request is duplicative of Request No. 18.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

11

**REQUEST NO. 20:**  Produce all documents You sent to furnisher regarding Plaintiff's dispute(s).

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "sent," and "furnisher."  The Request is also overbroad in that it requests "all documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 21:**  Produce all documents furnisher sent to you regarding Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "sent," and "furnisher."  The Request is also overbroad in that it requests "all documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 22:**  Produce all documents you sent to any other CRA regarding Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "sent," and "CRA."  The Request is also overbroad in that it requests "all documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

APPENDIX 013

**REQUEST NO. 23:**  Produce all documents any CRA sent to You regarding Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "sent," and "CRA."  The Request is also overbroad in that it requests "all documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 24:**  Produce all records of internal communications regarding Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all records," "internal communications," and "disputes."  The Request is also overbroad in that it requests "all documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 25:**  Produce all carbon copies from any CRA related to Plaintiff and/or the Account(s) at issue.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all carbon copies," "CRA," and "Account(s) at issue."  The Request is also overbroad in that it requests "all carbon copies" and "any CRA," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

APPENDIX 014

**REQUEST NO. 26:**  Produce all documents that identify any of Your employees that worked on Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "employees," and "disputes."  The Request is also overbroad in that it requests "all documents" and "any of [Experian's] employees," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 27:**  Produce all documents that identify any of Your agents, contractors and/or third-party that worked on Plaintiff's disputes.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all documents," "agents, contractors and/or third-party," and "disputes."  The Request is also overbroad in that it requests "all documents" and "any of [Experian's] employees," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 28:**  Produce all ACIS documents relating to Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all ACIS documents."  Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all ACIS documents," regardless of relevance to the account in dispute.

14

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 29:**  Produce all ACRO documents relating to Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all ACRO documents." Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all ACRO documents," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 30:**  Produce all Log F reports and documents relating to Plaintiff, including all inquiry information received and all reports or information provided.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all Log F reports and documents," "inquiry information," and "all reports or information provided."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests "all Log F reports and documents," "all inquiry information received," and "all reports or information provided," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 31:**  Produce all Frozen Scans related to Plaintiff or Plaintiff's identifying information for the past seven years.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all Frozen Scans" and

15

"identifying information."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests "all Frozen Scans," and "all identifying information" from the past seven years, regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 32:**  Produce all activity logs concerning Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all activity logs." Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all activity logs," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 33:**  Produce all comment logs concerning Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all comment logs." Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all comment logs," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 34:**  Produce all comment screens concerning Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all comment screens."

16

Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all comment screens," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 35:**  Produce all terminal audit trails concerning Plaintiff.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "all terminal audit trails." Experian does not understand this term and is therefore not able to comply.  The Request is also overbroad in that it requests "all terminal audit trails," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 36:**  Produce the CDIA Credit Reporting Resource Guide used by you during the Relevant Time Period.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "CDIA Credit Reporting Resource Guide," "used," and "you."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests all "CDIA Credit Reporting Resource Guide," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian is willing to meet and confer with Plaintiff about the scope of this request.  Production of any documents will be subject to the parties' agreement on a protective order.

17

**REQUEST NO. 37:**  Produce the actual credit score published by You to any of your subscribers or customers regarding Plaintiff during the previous five (5) years.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "the actual credit score," and "your subscribers or customers."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests all "credit score[s]" and for "any … subscribers or customers," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 38:**  Produce your current set of policies and procedures, in whatever format they currently exist, for compliance with 15 U.S.C. Sections 1681e(b) and 1681i of the FCRA.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "current set of policies and procedures," "whatever format they currently exist," and "compliance."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests all "polices and procedures," regardless of relevance to the account in dispute.

Subject to and without waiver of its objections, Experian is willing to meet and confer with Plaintiff about the scope of this request.  Production of any documents will be subject to the parties' agreement on a protective order.

**REQUEST NO. 39:**  Produce all flow charts, organization charts, or other documents sufficient to convey the identities of the personnel responsible for training, compliance, and policy-setting with respect to compliance with 15 U.S.C. Sections 1681e(b) and 1681i of the FCRA.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "flow charts," "organization charts," "other documents," "sufficient to convey," "personnel responsible for,"

18

"training," "compliance," "policy-setting" and "with respect to compliance."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests all "flow charts, organization charts, or other documents," regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian will not produce any documents responsive to this Request.

**REQUEST NO. 40:**  Produce all documents detailing any changes made to Your policies and/or procedures for compliance with 15 U.S.C. Sections 1681e(b) and 1681i of the FCRA during the preceding five (5) years.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "documents," "detailing," "changes made," "policies," "procedures," and "compliance."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests all "documents," regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian is willing to meet and confer with Plaintiff about the scope of this request.  Production of any documents will be subject to the parties' agreement on a protective order.

**REQUEST NO. 41:**  Produce all documents and/or manuals used in connection with the training or instruction of any of your employees and/or agents regarding consumer disputes and reinvestigations with respect to compliance with 15 U.S.C. Section 1681i.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "documents," "manuals," "used in connection," "training," "instruction," "your," "employees," "agents," "consumer disputes," "reinvestigations," and "compliance."  Experian does not understand these terms and

19

is therefore not able to comply.  The Request is also overbroad in that it requests all "documents

and/or manuals," regardless of relevance to the account in dispute.  This Request is also not

relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian is willing to meet and confer

with Plaintiff about the scope of this request.  Production of any documents will be subject to the

parties' agreement on a protective order.

**REQUEST NO. 42:**   Produce any document concerning every procedure that Defendant
employs when a consumer disputes information on a credit report.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request

on the ground that it is vague and ambiguous with respect to the terms "document," "procedure,"

and "employs."  Experian does not understand these terms and is therefore not able to comply.

The Request is also overbroad in that it requests any "document," regardless of relevance to the

account in dispute.  This Request is also not relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian is willing to meet and confer

with Plaintiff about the scope of this request.  Production of any documents will be subject to the

parties' agreement on a protective order.

**REQUEST NO. 43:**   Produce all documents reflecting any internal scoring system,
performance metrics, audits, or assessments used to evaluate the reliability or accuracy of
furnishers, including but not limited to those used for NATIONSTAR MORTGAGE LLC d/b/a
RUSHMORE SERVICING during the Relevant Time Period.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request

on the ground that it is vague and ambiguous with respect to the terms "documents," "internal

scoring system," "performance metrics," "audits," "assessments," "used to evaluate,"

"reliability," and "accuracy."  Experian does not understand these terms and is therefore not able

to comply.  The Request is also overbroad in that it requests all "documents," regardless of

20

relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian will not produce any documents responsive to this Request.

**REQUEST NO. 44:**  Produce any consumer-facing document or communication that explains Your procedure for investigating consumer disputes under 15 U.S.C. § 1681i.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "consumer-facing document," "communication," "explains," and "procedure."  Experian does not understand these terms and is therefore not able to comply.  The Request is also overbroad in that it requests any document or communication," regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.

Subject to and without waiver of its objections, Experian will produce files associated with Plaintiff from the last two years associated with the Rushmore mortgage tradeline.

**REQUEST NO. 45:**  For each fact witness or expert witness you believe may have knowledge of any of the facts, or matters that are alleged in Plaintiff's Complaint, Your Answer, Anticipated answer and/or defenses thereto and/or may have formed any opinion or consulted with You about the facts or basis of this lawsuit or any defense or allegation You have raised in this lawsuit, produce a copy of any affidavit, deposition transcript or video, or report which contains the testimony or opinion(s) of each such witness and which has been previously furnished to the Court or opposing counsel in such a case.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "believe," "knowledge," "facts," "matters," "consulted," "raised," and "furnished."  The Request is also overbroad in that it requests "any opinion" and "any affidavit, deposition transcript or video, or report," regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.  Experian objects to the extent this Request seeks documents that are publicly

21

available.  Experian objects to the extent this request seeks documents protected by attorney-client privilege or work product.

Subject to and without waiver of its objections, Experian will make its witness and expert disclosures per the deadlines set by the Court.

**REQUEST NO. 46:**  Produce copies of Your annual reports and financial statements for the five (5) years ending preceding the filing of Plaintiff's Complaint.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "annual reports," and "financial statements."  The Request is also overbroad in that it requests all "annual reports and financial statements," without relation to the relevant time period and regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.  Experian objects to the extent this Request seeks documents that are publicly available.

Subject to and without waiver of its objections, Experian does not anticipate producing documents responsive to this request.

**REQUEST NO. 47:**  Produce any and all documents related to or evidencing any and all lawsuits which Defendant has been named as a party based upon similar claims at issue Plaintiff's Complaint.

**RESPONSE:**  In addition to reasserting its General Objections, Experian objects to this Request on the ground that it is vague and ambiguous with respect to the terms "documents," "evidencing," "lawsuits," "named," "similar," and "at issue."  The Request is also overbroad in that it requests "any and all documents," regardless of relevance to the account in dispute.  This Request is also not relevant to the parties' claims or defenses.  Experian objects to the extent this Request seeks documents that are publicly available.  Experian objects to the extent this request seeks documents protected by attorney-client privilege or work product.

22

**RESPONSE:** Subject to and without waiver of its objections, Experian does not anticipate

producing documents responsive to this request.

Dated: September 19, 2025                              Respectfully submitted,


                                                      */s/ Chance B. McCraw*
                                                      Chance B. McCraw
                                                      JONES DAY
                                                      2727 North Harwood St.
                                                      Dallas, TX 75201
                                                      Telephone: 214.969.4563
                                                      Facsimile: 214.969.5100
                                                      cmccraw@jonesday.com

                                                      *Attorney for Defendant*
                                                      *Experian Information Solutions, Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

I Certify that on September 19, 2025, I served Experian Information Solutions, Inc.'s Response to Plaintiff's Requests for Production in the above-captioned matter to all counsel of record via email:

Dated: September 19, 2025                                 Respectfully submitted,

                                                */s/ Chance B. McCraw*
                                                Chance B. McCraw

24

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| VICTOR MANUEL RAMIREZ NAJERA, <br><br> Plaintiff, <br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC.; APPFOLIO, INC.; and NATIONSTAR MORTGAGE LLC d/b/a RUSHMORE SERVICING. <br><br> Defendant. | Case No.: 4:25-cv-443 <br><br><br> **DECLARATION OF YOUSSEF HAMMOUD** |

I, Youssef H. Hammoud, submit this declaration in support of Plaintiff's Motion to Compel Discovery.

1.      I am counsel for Plaintiff in the above-captioned matter. I have personal knowledge of the facts stated herein and, if called upon to testify, I could and would competently testify thereto.

2.      Pursuant to Local Rule 7.1(a), I certify that I met and conferred with counsel for Defendant Experian Information Solutions, Inc. ("Experian") regarding the discovery issues raised in Plaintiff's Motion to Compel.

3.      On November 18, 2025, Plaintiff deposed a former Experian employee named Timothy Sumida ("Sumida"). Sumida was a longtime Experian employee who was personally involved in development of Experian's matching algorithm, Find Consumer. Sumida's name appears as "Inventor" on several Experian patents, including patents that relate to functions performed by Find Consumer. During Sumida's deposition, he identified a document called the Find Consumer Details and Design Document, also referred to by the acronym "DRDD."

1

APPENDIX 027

4.      Sumida testified that the DRDD is contained in a Microsoft Word document housed on Experian's internal servers and contains details about the rules that Find Consumer uses in order to make determinations about whether incoming data is associated with a particular consumer's credit file. Beyond generalities, Sumida was unable to testify about why specific data would be matched to a consumer's credit file. Sumida repeatedly testified that the DRDD contained information about matching rules and that reviewing the DRDD would be necessary to understand why or how specific was matched to a specific consumer's credit file.

5.      On November 19, 2025, I spoke with counsel for Experian, Rebecca Anthony, via Teams. I stated Plaintiff's position that the DRDD contained relevant information about the specific Experian procedures at issue in this case.

6.      Ms. Anthony stated that Experian would not agree to produce the DRDD. Specifically, Ms. Anthony stated:

    a.  The DRDD is highly confidential and proprietary and contains all the matching rules, including information beyond the matching rules that may have been applied in this case. Therefore, Experian maintains that the majority of the DRDD is not relevant to the facts of this case.

    b.  Experian asserts that Plaintiff's request for this document is not proportional to the needs of the case based on Experian's contention that this case is a single-plaintiff case in which the Plaintiff has no evidence of damages.

    c.  In a separate, follow-up email, Ms. Anthony also stated that Experian asserts that the discovery sought by Plaintiff is duplicative and can be obtained through less intrusive means.

APPENDIX 028

7.      Ms. Anthony stated that based on Experian's position, she stated that her expectation was that there are no circumstances under which Experian will voluntarily produce the DRDD absent a court order compelling it to do so. Ms. Anthony later clarified via email that she did not know whether any circumstances exist under which Experian would agree to produce the DRDD.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

*/s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692 F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorneys for Plaintiff,*
*Victor Manuel Ramirez Najera*

- 3 -

# EXHIBIT 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Victor Manuel Ramirez Najera,<br><br>   *Plaintiff,*<br> *v.*<br><br>Experian Information Solutions, Inc.;<br>Appfolio, Inc.; and Nationstar Mortgage LLC<br>d/b/a Rushmore Servicing,<br><br>   *Defendants*. | CASE NO. 4:25-cv-00443-P |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S RULE 26
<u>EXPERT WITNESS DISCLOSURES</u>**

Defendant Experian Information Solutions, Inc. ("Experian"), by its undersigned counsel,

hereby discloses Mary Methvin as an expert witness in this action.

<u>**QUALIFICATIONS**</u>

Since September of 2002, Ms. Methvin has been employed with Experian Information

Solutions, Inc. ("Experian"). Ms. Methvin began her career at Experian as a Customer Service

Representative in the National Consumer Assistance Center ("NCAC").[1] On a daily basis, Ms.

Methvin assisted consumers who either believed that there was an inaccuracy or had questions

about information appearing on their Experian disclosures.  In this capacity, Ms. Methvin began

building a wealth of knowledge and experience assisting consumers.  Ms. Methvin observed a vast

array of circumstances that led consumers to contact Experian and the policies and procedures that

Experian had in place to effectively and efficiently assist them.

In November of 2004, Ms. Methvin was promoted to Experian's internal auditing

---

[1] Beginning in 2016, the "NCAC" has been re-named the "My Customer Experian" ("MCE").

1

department within the NCAC as Quality Analyst Senior. In this role, Ms. Methvin was tasked with reviewing files and phone calls processed by Experian's dispute agents to ensure their adherence to and compliance with Experian's established policies and procedures. This position provided Ms. Methvin unique insight into the mindsets of agents, and afforded her the opportunity to personally monitor and review agent adherence to Experian's processes and policies on a daily basis.

In January 2010, Ms. Methvin accepted a position as a Specialist within the Consumer Affairs Special Services ("CASS")[2] division of the NCAC. In this capacity, Ms. Methvin assisted consumers who were represented by third parties with questions, concerns, or disputes regarding alleged inaccuracies appearing on their Experian consumer disclosures. The third parties included, but were not limited to, attorneys, the Federal Trade Commission, and the Better Business Bureau.

In January 2011, Ms. Methvin was promoted to Senior Legal and Compliance Specialist within CASS and began assisting with litigation research. During the five (5) years that she held that position, in addition to assisting consumers, Ms. Methvin researched a vast number of consumer litigation cases. This research required that she analyze individual consumer contacts with Experian and the effectiveness of Experian's reinvestigation policies and procedures. Ms. Methvin often made procedural and systemic recommendations intended to improve customer service and data integrity within Experian's consumer credit database. Also during this timeframe, Ms. Methvin served as Experian's corporate representative and, in this capacity, she provided written and oral testimony in multiple consumer cases litigated in federal court regarding Experian's internal documentation, contacts with consumers, and its policies and procedures in

---

[2] Beginning in 2016, the "CASS" department has been re-named "Experian Consumer Assistance" ("ECA").

2

cases where consumers disputed the accuracy of information contained in their credit file. This role included participating in small claims matters in jurisdictions across the country as Experian's corporate representative.

Ms. Methvin is currently employed as a Compliance and Litigation Analyst within Experian's Regulatory Compliance Department, a position she has held since June 2016. Ms. Methvin's duties include the constant review of Experian's policies, procedures, and systems as they relate to its consumer credit reporting business. Her duties also include making recommendations to mitigate risks and improve various policies and procedures, as appropriate. In addition, Ms. Methvin analyzes Experian's credit reporting processes in connection with litigation filed by consumers against Experian and provides oral and written testimony in connection with her analyses.

During her tenure with Experian, in addition to working within the NCAC (now MCE), Ms. Methvin has also worked closely with many other business units at Experian. Due to her extensive research, Ms. Methvin has become familiar with the procedures that Experian employs to assure maximum possible accuracy in gathering and storing credit information and assembling credit reports and consumer disclosures. A list of Ms. Methvin's qualifications and work experience is included in her Curriculum Vitae, which is attached as Exhibit A to her Expert Report, which is Exhibit 1 to this document.

**TESTIMONY**

Ms. Methvin will testify regarding her conclusions in this case and the nature of the credit reporting business generally. Ms. Methvin will also testify regarding Experian's procedures for ensuring maximum possible accuracy of credit reports, Experian's procedures for addressing mixed files, Experian's policies for reinvestigations, Experian's policies for compliance with the

3

provisions set forth in the Fair Credit Reporting Act ("FCRA"), and the impact of a mortgage in a credit file. Finally, Ms. Methvin will testify to the matters discussed in her Expert Report, attached as Exhibit 1 hereto.

## DOCUMENTS AND INFORMATION RELIED UPON

In forming her opinions, Ms. Methvin relied upon her years of experience in the consumer credit reporting field, and the knowledge she has acquired over the years regarding consumer credit reporting in general, Experian's credit reporting system in particular, and the credit granting industry. She also relied upon documents produced and generated by Experian and Plaintiff, including, but not limited to, Plaintiff's Experian credit disclosures, Experian's Administrative Report, and Disclosure Log for Plaintiff. Ms. Methvin also reviewed the following documents: (1) Plaintiff Victor Manuel Ramirez Najera ("Plaintiff")'s Complaint (ECF No. 1) and (2) documents produced in this litigation by Experian. Experian expects to use these documents or portions of these as exhibits to support Ms. Methvin's opinions. Ms. Methvin further anticipates reviewing any documents or discovery responses that may later become relevant. To the extent that Ms. Methvin has not had the opportunity to comprehensively study all documents produced in this case, she reserves the right to supplement her report based on a comprehensive study of these documents as well as any further information regarding this case of which she may become aware. Ms. Methvin reserves the right to review other information that may be relevant to class claims and supplement the instant report. Ms. Methvin also reserves the right to supplement her report based on a comprehensive study of any additional documents that may become available at a later date as well as any further information regarding this case, including but not limited to any materials disclosed on behalf of any expert witness(es) for Plaintiff.

4

## COMPENSATION

Ms. Methvin is not being compensated other than through her salary as Compliance and Litigation Analyst for Experian and reimbursement for any expenses associated with that position.

## PRIOR TESTIMONY

Ms. Methvin has testified in several other cases, a list of which is attached as Exhibit B to her Expert Report.

Dated: October 22, 2025

Respectfully submitted,

*/s/ Chance B. McCraw*
Chance B. McCraw
JONES DAY
2727 North Harwood St.
Dallas, TX 75201
Telephone: 214.969.4563
Facsimile: 214.969.5100
cmccraw@jonesday.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

5

## EXHIBIT 1

### EXPERT REPORT OF MARY METHVIN IN THE MATTER OF
### VICTOR RAMIREZ V. EXPERIAN INFORMATION SOLUTIONS INC, ET. AL.

### BACKGROUND AND QUALIFICATIONS

Since September of 2002, I have been employed with Experian Information Solutions, Inc. ("Experian"). I began my career at Experian as a Customer Service Representative in the National Consumer Assistance Center ("NCAC").[3] On a daily basis, I assisted consumers who either believed that there was an inaccuracy on or had questions about information appearing on their Experian disclosures. In this capacity, I began building a wealth of knowledge and experience assisting consumers. I observed a vast array of circumstances that led consumers to contact Experian and the policies and procedures that Experian had in place to effectively and efficiently assist them.

In November of 2004, I was promoted to Experian's internal auditing department within the NCAC as Quality Analyst Senior. In this role, I was tasked with reviewing files and phone calls processed by Experian's dispute agents, to ensure their adherence to and compliance with Experian's established policies and procedures. This position provided me unique insight to the mindsets of agents and afforded me the opportunity to personally monitor and review agent adherence to Experian's processes and policies on a daily basis.

In January of 2010, I accepted a position as a Specialist within the Consumer Affairs Special Services ("CASS") division of the NCAC.[4] In this capacity, I assisted consumers who were represented by third parties with questions, concerns, or disputes regarding alleged

---

[3] Beginning in 2016, the "NCAC" has been re-named the "My Customer Experience" ("MCE").

[4] Beginning in 2016, the "CASS" department has been re-named "Experian Consumer Assistance" ("ECA").

6

inaccuracies appearing on their Experian credit reports. The third parties included, but were not limited to, attorneys, the Federal Trade Commission, and the Better Business Bureau.

In January 2011, I was promoted to Senior Legal and Compliance Specialist within CASS and began assisting with litigation research. During the five (5) years that I held that position, in addition to assisting consumers, I researched a vast number of consumer litigation cases. This research required that I analyze individual consumer contacts with Experian and the effectiveness of Experian's reinvestigation policies and procedures. I often made procedural and systemic recommendations intended to improve customer service and data integrity within Experian's consumer credit database. Also during this timeframe, I served as Experian's corporate representative and, in this capacity, I provided written and oral testimony in multiple consumer cases litigated in federal court regarding Experian's internal documentation, contacts with consumers, and its policies and procedures in cases where consumers disputed the accuracy of information contained in their credit file. This role included participating in small claims matters in jurisdictions across the country as Experian's corporate representative.

I am currently employed as a Compliance and Litigation Analyst within Experian's Regulatory Compliance Department, a position I have held since June 2016. My duties include the constant review of Experian's policies, procedures, and systems as they relate to its consumer credit reporting business. My duties also include making recommendations to mitigate risks and improve various policies and procedures, as appropriate. In addition, I analyze Experian's credit reporting processes in connection with litigation filed by consumers against Experian and provide oral and written testimony in connection with my analyses.

During my tenure with Experian, in addition to working within the NCAC (now MCE), I have also worked closely with many other business units at Experian. Due to my extensive research,

7

I have become familiar with the procedures that Experian employs to assure maximum possible accuracy in gathering and storing credit information and assembling credit reports and consumer disclosures.

I have become intimately familiar with how Experian operates under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), framework within the industry.[5] I have served and continue to serve as an internal subject-matter expert for Experian in numerous areas and have been one of its designated 30(b)(6) witnesses for over twelve (12) years. As shown above, I have spent years speaking with consumers, processing disputes, evaluating responses received from data furnishers in response to consumer disputes, applying and evaluating Experian's policies and procedures and credit reporting systems, collaborating with members of the industry taskforce and employees of other consumer reporting agencies ("CRAs") through various working groups, and developing a working knowledge of the FCRA. Further, it is part of my daily responsibilities to review Experian's credit reporting policies and procedures for effectiveness and adherence to Experian's understanding of the statutory obligations imposed upon it as a CRA.

For the past nine (9) years, I have also served as an expert witness for Experian pursuant to Federal Rule of Civil Procedure 26(a)(2). I have a clear understanding of the policies and procedures in place at Experian and my opinions and statements in this report and about this case are based on actual documents, Experian's documented policies and procedures, and my intimate knowledge of the application of those policies and procedures to the present facts. I further understand the industry practices and reporting guidelines at a detailed level and understand the

---

[5] To be clear, in this report I am not opining as to whether Experian's policies as a matter of law comply with the FCRA. When I cite language from the FCRA I am doing so to provide support for Experian's procedures and when I use the term "reasonable" in this report, I am doing so to indicate that, based on my experience, I believe Experian's policies and actions were reasonable.

8

tools and codes available to data furnishers, which allow them to accurately report their accurate account experiences with consumers and adjust that reporting if necessary. I am in a much better position than any non-Experian employee to factually state what procedures Experian utilizes on a daily basis, specifically the policies and procedures that were used in the handling of Plaintiff's credit file, and, in particular, those related to the file assembly at issue in this case. I have not been compensated for developing this report, other than through my regular salary as an Experian employee.

**OPINIONS**

### I.    Summary of Opinions

Based upon my years of experience in the consumer credit reporting field and the knowledge I have acquired over the years regarding Experian's file assembly and consumer dispute processing policies and procedures, along with my review of Plaintiff Victor Manuel Ramirez Najera's ("Plaintiff") Experian credit file, the following is a summary of my findings and opinions:

- Experian's procedures for assembling consumer credit files utilize all available identifiers for a consumer and are reasonable. The procedures that Experian used to assemble Plaintiff's credit file were reasonable.

- Given the almost identical personal identification information ("PII") shared between Plaintiff and his father, and the manner in which Experian's system must react to similarities in order to assemble complete credit files, the procedures that allowed the files to mix were reasonable.

- The policies and procedures that Experian has in place to assist consumers whose files mix are reasonable and effective.

- Plaintiff likely benefitted from the inclusion of his father's mortgage in his credit file. After the removal of the mortgage from Plaintiff's credit file, his credit score decreased. Despite the missed payments on the accounts, the presence of the account itself was a positive factor for the FICO score algorithm.

9

## II.        Opinions and Bases

Experian has expended significant time and resources in the research and development of reasonable procedures to assure maximum possible accuracy in all aspects of its credit reporting business. As a result, Experian has implemented extensive policies and procedures to govern the handling of consumer reinvestigation requests to ensure the highest degree of data accuracy possible. Experian strives not only to comply with the requirements imposed upon it as a credit reporting agency under all applicable laws but also strives to provide excellent customer service and enhance the consumer experience. Experian invests a great deal of time and resources in the constant review and enhancement of its reinvestigation policies and procedures to ensure that the policies and procedures continue to evolve with regulatory changes, the industry landscape, and the needs of our consumers. Experian believes that the implementation of reasonable procedures to assure maximum possible accuracy, such as those invoked during file assembly and the investigation process, must be the foundation of its business practices.

### A.        Experian's Procedures

Experian, as a consumer credit reporting agency, houses credit information regarding individual consumers that has been reported to it by its contracted data furnishers. Almost everything that Experian does in its capacity as a consumer reporting agency is done with the intent to assure maximum possible accuracy of the information it stores and disseminates, and Experian has expended significant time and resources in the research and development of reasonable procedures to assure maximum possible accuracy in all aspects of its credit reporting business. Included in that effort are the procedures utilized to ensure that, to the highest degree possible, data received from its data furnishers is accurate. Prior to accepting data from a prospective data furnisher, Experian requires the entity to undergo a thorough vetting process which includes, but

10

is not limited to, an inspection of the prospective furnisher's business premises, a review of its stated business purposes, checking applicable business license(s), business affiliations, advertisements, and website content. Only after it has been approved and all contracts and data agreements are executed does Experian begin receiving data from that furnisher.

After credit data is received by Experian but before it is added to a consumer's file, the data is subjected to rigorous manual and automated quality control and statutory compliance procedures to help ensure that only accurate information is reported. As part of its procedures to help ensure that only accurate information that meets reporting guidelines is ultimately displayed in a consumer credit report, Experian has built automated controls into its computer system to detect possible errors. These controls include checks to ensure that the data does not violate Experian's policies regarding the display of adverse consumer information, data types that Experian does not collect, or any prescriptions of the federal Fair Credit Reporting Act ("FCRA").

Experian does not store the credit information it receives in assembled or "completed" credit reports. Instead, the system used by Experian stores the credit items individually, linking them to the specific identifying information with which they were reported. To determine which of the millions of credit items contained in Experian's database should be displayed on a particular consumer's credit report, Experian's computer system compares, analyzes, and matches the identification information provided in the request for the credit report (or "inquiry") with the identification information that was reported with and linked to the vast amount of credit items in its database. Experian utilizes all identification information provided by the consumer or subscriber upon inquiry (*e.g.*, name, address, social security number, date of birth), but also considers other identification information that has been reported about a consumer over time in an effort to assemble the most complete and accurate information possible. Only after this extensive

11

and complex matching process does Experian's database begin to assemble a consumer report for display.

Similarly, when deciding during file assembly whether to associate a new piece of credit information with an existing consumer or if a new consumer file should be created, Experian considers not only the identification information associated to the piece of credit data, but also the identification information associated with other consumers that exist within the database. Each time Experian associated information to Plaintiff's credit file during file assembly, it followed all of these policies and procedures.

In my opinion, Experian's procedures for maintaining and assembling credit information are reasonable and designed to assure the maximum possible accuracy of the information it ultimately disseminates.

B.    **Consumer Behavior and Identification Information**

The matching process and logic designed by Experian to assemble consumer credit reports must not only perform and properly apply its matching logic when supplied with a consumer's complete and accurate identifying information, it must also accommodate for the sometimes inconsistent manner in which consumers and data furnishers use identification information. Throughout their adult lives, consumers are required to provide their personal identification information when applying for credit, making purchases, obtaining utility services, etc. The identification information they provide may include their name (including nicknames, inadvertent misspellings, and name changes), current and previous addresses, social security number ("SSN") (including inadvertent typos), and date of birth. However, consumers do not always provide the same or every form of identification information with each credit application or transaction. Indeed, some pieces of a consumer's identification information, such as address, surname, and

12

nickname, are likely to change over time. Moreover, it is not uncommon for simple typographical errors to occur when identification information is entered or dictated between consumers and creditors, and then for those errors to be passed onto the credit reporting agencies by the reporting or inquiring sources. In 2012, the Consumer Financial Protection Bureau ("CFPB") acknowledged this credit reporting challenge in its publication, "Key Dimensions and Processes in the U.S. Credit Reporting System" ("2012 CFPB Report"; *available at* https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf). In identifying especially difficult matching challenges, the Report expressly notes, "As one example, consider the matching challenges posed by relatives with the same first and last name, but different middle names, who reside at the same address, and who do not regularly use their middle name when applying for credit." The CFPB Report also recognizes the reality that consumers frequently change their identifying information:

> Adding to the complexity, millions of individuals change how they identify themselves over time or between furnishers. Each year, a sizeable number of Americans change their name through marriage and divorce. Separately, consumers do not necessarily refer to themselves consistently in credit applications. For example, a woman named Elizabeth may use her full name on one application and then refer to herself with a nickname "Betty," "Beth," "Liz," or "Eliza" on another credit transaction. Finally, creditor practices may vary as to the personally identifying information they require in their loan or credit applications, with the result that the criteria one creditor uses to identify a consumer in a trade line update may vary from how another creditor identifies him or her.

*See* CFPB Report, at 21.

This viewpoint is also supported by the FTC, who in 2004 provided a summary of the challenges that are inherent in the process of matching. Fed. Trade Comm'n, *Report to Congress Under Sections 318 and 319 of the Fair and Accurate Credit Transactions Act* 54 (Dec. 2004), *available at* https://www.ftc.gov/sites/default/files/documents/reports/under-section-318-and-319-fair-and-accurate-credit-transaction-act-2003/041209factarpt.pdf (referred to hereinafter as

13

the "FTC Report" ). The report recognized that consumer information, including things like names and addresses that can be changed, is prone to variation and human error. *Id.* at 41. Even SSNs, which are a unique identifier, are prone to variation and error and thus cannot be relied on completely. In fact, The FTC estimated "error rates in the SSN data-entry process" to be between 0.5% and 4%. *Id.* at 39.

Because of these common examples of consumer behavior, which are often unpredictable, it is critical that Experian's policies and procedures accommodate for changes and variations in items of information over a consumer's lifetime, especially because those changes often occur without any prior notice to Experian. Failure to accommodate for those changes or variances would inhibit Experian's ability to assemble complete credit reports that contain all the information in its database for a particular consumer. In kind, requiring an exact match on any piece of identification information would, in my opinion and experience, lead to consumers having credit data scattered across multiple credit reports instead of the intended, and expected, singular complete and accurate report.

## C.    Mixed Files

A "mixed file," sometimes also referred to as a "merged file," occurs when individual credit files belonging to different consumers inadvertently mix together, often because similarities in identifying information lead Experian's matching algorithm to believe they are the same individual. Experian is typically put on notice of a mixed file when a consumer disputes items appearing on his or her credit report, and the disputed items reflect the unique name and/or social security number of another consumer. When a file is mixed, the trade lines and other items belonging to both consumers appear in one credit file, along with both consumers' identifiers, including name(s), address(s), and SSN(s). Mixed files often occur between family members due

14

to similar names and common addresses, but they can also occur between unrelated consumers who nonetheless share similar identification information.

The format utilized within the industry for reporting credit information (the industry standards) is the Metro 2® format. The guidance for appropriate use of the fields and codes within Metro 2® are contained within the Credit Reporting Resource Guide ("CRRG"). The standards which dictate the manner in which consumer identifying information is reported by data reporters allow complete identification to be reported for each consumer, each month, which improves the ability of consumer reporting agencies, such as Experian, to match the information to the correct consumer. The guidance is simple and easily understood. It instructs that the furnisher should report the complete name, address, SSN, and date of birth of the legally liable consumer(s). But furnishers may not always have all of this information to provide.

In this case, the situation is complicated by the high degree of similarity between the identification information for Plaintiff and his father and their immigration status. For example, the name "Victor Manuel Ramirez" has been reported both with and without an SSN. This could be either consumer. Further, they shared an address (3924 Orcas Street, Fort Worth, Texas 76106) from at least January 28, 2009, to June 30, 2023. In my opinion, it was reasonable for Experian to believe that the PennyMac Loan Services ("PennyMac") and Rushmore Loan Management Services ("Rushmore") accounts (collectively, the "Mortgage") belonged to Plaintiff. Plaintiff's full name is **Victor Manuel Ramirez Najera**. His father's name is **Victor Manuel Ramirez**. Plaintiff and his father share the same first, middle, and first last name. According to Plaintiff's testimony, Plaintiff did not use his second last name when applying for credit or conducting business, nor did he use the suffix "Junior."

15

Further complicating matters, Experian has learned that Plaintiff's father does not possess an SSN. According to Plaintiff, as a DACA recipient, he obtained an SSN, but not until January 4, 2013. There is no indication that Plaintiff's father ever applied for or received an SSN

It is not uncommon for consumer information to report without an SSN, even when the consumer does have one. The slight differences in Plaintiff and his father's information could easily be explained by common variations often caused by the typical consumer behavior that I explained earlier.

Because of the almost identical nature of Plaintiff and his father's personal identifying information, and the fact that furnishers reported to Experian that they did not always use an SSN to apply for credit, Experian's system treated the information from the Mortgage as belonging to Plaintiff. In other words, furnishers were reporting multiple combinations of identification information that were consistent with the behavior of Plaintiff when accounting for things like typos, name/address changes, and obtaining an SSN. Experian followed all guidance from administrative agencies – allowing flexibility in data matching to promote completeness of credit files.

As early as June 2011, Experian reported a PennyMac account with the name "Victor Manuel Ramirez" and the address of "3924 Orcas Street, Fort Worth, Texas 76106." A credit file had already been established using this identifying information. However, the PennyMac account was the first account that Experian reported on the credit file. As you can see, this identifying information does not conflict with Plaintiff's information.

On March 2, 2018, another data furnisher (Oportun/Progreso) reported an account (XXX0088) using the name "Victor Ramirez- Najera" and the address of "3924 Orcas Street, Fort Worth, Texas 76106." Here again, there are no conflicts with the information already on file, so

16

this account was added to the existing information, and established a name variation for this consumer. Experian would not know these are two different consumers; rather this appears to be the same individual using a variation of his name. On May 15, 2019, Experian received information from another data furnisher, Rushmore, providing consumer information of "Victor Manuel Ramirez" and the address of "3924 Orcas Street, Fort Worth, Texas 76106," but no SSN. Plaintiff alleges this account and the PennyMac account do not belong to him. Because the identification information matched the identification information on file, the Rushmore account was added to the same credit file. Experian understands that consumers do not always provide their SSN when applying for credit. It was logical for both accounts to be on the same credit file. The identification information was identical to the previously provided information by PennyMac. Experian now understands that Plaintiff and his father had nearly identical identifying information, but are different individuals.

Experian received similar information from other data furnishers. From March 2, 2018 to the present, Experian received information from 12 other data furnishers with the names "Victor Ramirez," "Victor Manuel Ramirez," "Victor Ramirez-Najera," "Victor Manuel Ramirez-Najera," the address "3924 Orcas Street, Fort Worth, Texas 76106," and with or without Plaintiff's SSN. Only one additional account ever reported a different address, but it reported the name "Victor Ramirez." Plaintiff does not dispute these 13 other accounts or allege these were mixed.

In sum, it would have been nearly impossible for Experian to differentiate between the two individuals as to the PennyMac and Rushmore accounts. It would have simply appeared to Experian that Plaintiff opened these accounts under a name variation and again, with no SSN.

Although Plaintiff and his father have different dates of birth and only Plaintiff later obtained an SSN, Experian can only consider the information available to it at any given time.

17

Here, there is no evidence that a conflict in the date of birth field or SSN existed when the initial decision was made to place the PennyMac and Rushmore accounts on Plaintiff's credit file. Experian does not make a matching decision on only the last name field. If a furnisher reported a conflicting date of birth or SSN after that date, Experian allows flexibility because furnishers or consumers could report incorrect dates of birth or SSNs.[6] Had Plaintiff's father had his own SSN and used it when utilizing credit, Experian would have placed the PennyMac and Rushmore accounts on Plaintiff's father's credit file. Furthermore, Experian did not receive Plaintiff's date of birth until July 11, 2019, years after adding the PennyMac account and months after adding the Rushmore account to Plaintiff's credit file. All that being said, I have seen no evidence that a date of birth or SSN conflict existed with respect to the specific accounts at issue.

Taking these types of circumstances into consideration, in order to achieve maximum possible accuracy of the information that is to be included in an individual's Experian credit file, Experian has implemented a system which understands that consumers and creditors do not always use identification information in a consistent or complete manner. For these reasons, Experian's file assembly and matching logic must allow for some flexibility in identifiers. In fact, I would be concerned about the integrity and reasonableness of Experian's matching logic if these two accounts had not mixed given that Plaintiff and his father's identification information was used interchangeably by reporters and made them appear to be a single consumer using variances in their identification information, as I detailed above. Their circumstance is not typical and if we were to design a system that without intervention kept these two accounts from appearing on

---

[6] Given that there was only one Social Security number on the file, Plaintiff's expert's repeated contention that "the simple fix of matching a full SSN or other criteria [] would have prevented this merged file from occurring in the first place," *e.g.*, Hollon Report at 5, 40–41, is demonstrably false.

18

Plaintiff's credit file, we would be disparaging almost all of the other estimated 250 million consumers in our credit reporting database.[7] Experian—utilizing the systems and procedures that it has developed—is highly successful in the assembly of credit reports that are complete and of maximum possible accuracy for the consumers in its database. The FTC and CFPB appear to have recognized this suboptimal possibility as the premise of exact matching was considered and dismissed by them as cited earlier in this report.

### D.      Experian's Duty to Reinvestigate and Remedying a Mixed File

Another aspect of credit reporting, which is an important piece to ensuring the accuracy of data, is the reinvestigation process. Under the FCRA, consumers are given the right to request a reinvestigation of any information appearing on their credit file that they believe is inaccurate. This reinvestigation process provides an avenue for consumers to inform the consumer reporting agency of a suspected inaccuracy so that the agency can, in turn, either contact the provider of the data in question, which is in the best position to then investigate the consumer's claim, or employ an internal policy or procedure that will rectify the consumer's dispute. As set forth by the FCRA, the duties imposed upon the consumer reporting agency, and likewise the data furnisher, reflect the limited capabilities of the consumer reporting agency in this situation, recognizing that the agency is a third party to the origination of all credit information.

In order to comply with the requirement to reinvestigate, Experian has implemented procedures allowing consumers, who are the subject of the reported information, to be directly

---

[7] Mr. Hollon asserts that 3% of the files in Experian's database are mixed files; however, this claim is presented without any supporting evidence, citation, or data. Based on Experian's internal records, this figure is inaccurate. Experian actively monitors for mixed files and takes immediate corrective action when such cases are identified. To date, all known instances of mixed files have been resolved. The proportion of files that were once mixed and have since been corrected represents significantly less than 1% of the total database. Given the lack of substantiation, Mr. Hollon's statements on this matter should be viewed with caution.

APPENDIX 049

involved in maintaining the accuracy of the information in their credit reports. This is consistent with language from the statute. 15 U.S.C. § 1681i(a)(1)(A) specifies the actions that must occur when "...the consumer notifies the agency directly, or indirectly through a reseller..." Unless conveyed through a reseller, communication directly from the consumer is required to trigger the reinvestigation obligation. It is my opinion that in making this specification, Congress recognized that a consumer's direct active participation in the dispute process is vital to achieve Experian's goal of maximum possible accuracy, as the consumer is in the best position to know the circumstances surrounding their dispute and claim of inaccuracy. The consumer's knowledge about their dispute will not only determine the type of dispute that Experian conveys to its source, but it will also dictate the policies and procedures that Experian employs for the evaluation and resolution of each individual dispute, including the procedures that Experian applies when it evaluates and processes the respective responses it receives from the reporting source.

Experian provides consumers with various methods to request copies of their credit disclosures for review and, if necessary, dispute information contained therein. Likewise, it allows consumers to submit disputes by telephone, mail, and electronically through a web portal.[8] MCE is staffed with dispute associates who are extensively trained and equipped to assist consumers with questions, concerns or disputes that they may have with information appearing on an Experian credit report. MCE also has agents who are trained specifically to deal with possible mixed files.

When Experian is notified or otherwise learns that consumers' files have inadvertently mixed, in most cases Experian will separate the files using internal procedures without the need to

---

[8] For consumers using the web portal to alert Experian to a potential mixed file, Experian instructs the consumer to reach out directly by telephone, due to the complexity that a mixed file presents. Specifically, when a consumer indicates that an account does not belong to them, the web portal notes "If you believe this may be the result of fraud or that another person's information may have merged with yours, please call us for assistance at 1-855-414-6048."

20

contact any data furnishers. This was the case when Experian was notified of Plaintiff's concerns through the submission of his disputes. Additionally, Experian takes measures to ensure that the files do not re-mix. It does so by adding a Do Not Combine ("DNC") notation to the contacting consumer's credit file. When a DNC is present, an exact 9-digit social security number match is required before Experian will match a particular credit item in response to a creditor's inquiry for that consumer's credit history. Although a DNC on a consumer's file will reduce the likelihood of subsequent mixing, the drawback is that the consumer's subsequent applications for credit must contain exact and complete information or else his or her credit history may not be located due to the more stringent matching requirement. For this reason, the DNC cannot be applied to files across the database until and at which time a mixed file is determined to exist.

Upon receipt of Plaintiff's disputes, the steps described above were immediately taken. After Plaintiff's first dispute, the furnisher of the PennyMac account reported a different date of birth (1970) and a different SSN. Due to the discrepancy in the identification provided in the response, Experian promptly deleted the PennyMac account.

The furnisher of the Rushmore account verified the account as accurate and provided Plaintiff's name (Victor Ramirez), SSN, date of birth, and address (3924 Orcas Street, Fort Worth, Texas 76106). After Plaintiff's second dispute, the furnisher of the Rushmore account verified the account and provided Plaintiff's name (Victor M. Ramirez), date of birth, and address (3924 Orcas Street, Fort Worth, Texas 76106). Experian received a third dispute from a reseller during the pendency of this case and Experian removed the Rushmore account at that time. Once Experian removed the Rushmore account, Plaintiff's credit score decreased.

A DNC was added to protect Plaintiff's file going forward. It is odd to me that Plaintiff waited nine months before disputing the Mortgage accounts once he noticed them on the Appfolio

21

credit report. Plaintiff then waited a further four months after he received the results of his first dispute to submit any documents to support his dispute.

## CONCLUSION

Experian's very existence as a credit reporting agency hinges on its ability to provide its customers with accurate and reliable credit information on consumers with whom they wish to conduct business. Experian has no motivation to provide incorrect information about any consumer to a prospective lender. In fact, it is bad for business to do so. Thus, Experian has policies and procedures in place designed to assure the maximum possible accuracy of the information it assembles, stores, and reports. Those policies and procedures include the matching logic and file assembly procedures described throughout this report.

Plaintiff's file was apparently mixed with that of his father for both the PennyMac and the Rushmore mortgages. These are two individual consumers who have almost identical identification information. The procedures that allowed the files to mix for the Mortgage are imperative to ensure that consumers benefit from their complete and accurate credit files when they apply for credit. Because the procedures resulted in a mixed file in Plaintiff's case, a situation that is statistically rare, that does not itself indicate that the procedures are not reasonable. The procedures that Experian utilizes to assemble its credit reports, including those it used to assemble Plaintiff's credit file, are reasonable and are designed to ensure the maximum possible accuracy of the reports Experian disseminates.

Experian has reasonable and effective procedures to assist consumers when their file mixes with that of another consumer. They involve separation of the credit files and application of a protective mechanism to prevent the condition from reoccurring. Experian also followed its reasonable procedures in investigating the PennyMac and the Rushmore accounts. The PennyMac account was deleted after the first dispute, because the identifying information provided by

22

PennyMac did not match with Plaintiff. When the Rushmore account was disputed the first time, Experian sent Plaintiff's description of the dispute to the furnisher to verify the account. The furnisher verified the account as accurate and reported Plaintiff's name as "Victor Ramirez," social security number as "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," date of birth as "12/14/1995," and address as "3924 Orcas Street, Fort Worth, TX 76106." For the second dispute, the furnisher verified the account as accurate and reported Plaintiff's names as "Victor M Ramirez," date of birth as "12/14/1995," and address as "3924 Orcas Street, Fort Worth, TX 76106." The information provided by the furnisher in both responses matched Plaintiff's information and not his father's information.

Plaintiff benefitted from the inclusion of the Mortgage. The PennyMac and Rushmore accounts increased Plaintiff's credit score and made him more creditworthy. Once Experian removed the accounts from Plaintiff's credit file, Plaintiff's credit score decreased. Of note, both accounts were mortgages that had over a decade's worth of credit history. Mortgages are typically more difficult to get than other types of credit and potential lenders generally look favorably on long credit history. Plaintiff surely received a benefit when the mortgage accounts were present on the credit file.

### DATA AND OTHER INFORMATION CONSIDERED IN FORMING OPINIONS

In forming the above opinions, I relied upon my years of experience in the consumer credit reporting field, and the knowledge I have acquired over the years regarding consumer credit reporting in general, Experian's credit reporting system and in particular, my expertise and vast experience in Experian's dispute handling policies and procedures as well as those utilized in the compilation of credit reports. I also relied upon my knowledge of the industry guidance and my review of the documents produced by Plaintiff and the documents produced by Experian. I reserve the right to supplement this report based on a comprehensive study of any additional documents as well as any further information regarding this case that becomes available.

APPENDIX 053

Dated:  October 22, 2025

Mary Methvin

24

<u>**EXHIBIT A**</u>
<u>**Curriculum Vitae**</u>

Mary Methvin
Compliance and Litigation Analyst
Experian Information Solutions, Inc.
701 Experian Parkway, Allen, TX
75013

**Education**

**Lamar University** (1985-1988)
- Accounting/Finance Major

**Employment History**

**Experian Information Solutions, Inc.**
- Compliance and Litigation Analyst (June 2016 to present)
- Senior Legal and Compliance Specialist (January 2011 – June 2016)
- Senior Regulatory Affairs Associate (January 2010 - December 2010)
- Quality Audit and Risk Administrator Senior (November 2004- December 2010)
- Customer Service Representative (September 2002 – October 2004)

**CitiGroup Inc.**
- Customer Service, Client Resolutions and Collections (March 2000 – July 2002)

**Bank of America (f/k/a Nations Bank)**
- ATM/Vault Teller (January 1991 – March 1996)

**Training**

Consumer Data Industry Association (CDIA) Fair Credit Reporting Act Certification

Experian related training:
- NCAC Investigation Training (includes Fraud/Mixed)
- ACDVs: Evaluating and Processing
- Trade Secrets and Confidential Information: Your Obligations
- With All Due Respect – Promoting a Respectful Workplace
- Express Request and Sealed Credit Reports
- Information Security Awareness
- Profile Maintenance and Special Handling
- Credit Score Overview
- Automated Data Flow
- Power of the PIN
- File One Administrative Credit Reports
- Creating and Maintaining a Positive Work Environment
- Promoting a Respectful Workplace
- Intellectual Property at Experian - Protecting and Respecting Intangible Assets
- Security Freeze Training
- Consumer Letter Training
- Achieving Customer Service Excellence

25

- Experian Global Anti-Corruption Training
- Personalizing the Customer Experience
- Vantage Score
- Security Fundamentals Annual Certification
- Unfair, Deceptive or Abusive Acts or Practices
- Fair Credit Reporting Act Awareness (FCRA)
- HIPPA Privacy and Security Rules at Experian
- Gramm Leach Bliley Act (GLB) -Privacy and Security Breach
- Complaint Management Program
- Credit Basics Introduction
- Bribery and Corrupt Practices Policy
- Ethical Principles and Fraud Prevention
- Experian and MYFICO Information Session
- Suspicious Activities and Red Flags
- Equal Credit Opportunity and Fair Housing Acts (ECOA and FHA)
- Drivers Privacy Protection Act (DPPA)
- Credit Repair Organizations Act (CROA)
- NICE Administrator Training
- Third Party Risk Management Program Overview (TPMP)
- Consumer Compliance: Reasonable Procedures, Prescreen Requirements, Data Furnishers, User Requirements, Consumer Disclosure Requirements, Dispute Resolution Requirements

**Other Experian Related Training:**

- Techniques for Better Time Management
- Difficult People in the Workplace
- Foundations of Grammar
- Consumers, Conflict, and Confrontation
- Serving Your Internal Customers
- Decision Making
- Communication Etiquette
- Overview to Effective Business Communication
- Coaching: Driving Performance
- Analyzing and Managing Data
- Coping with Stress
- Communicating to Increase Understanding
- Preventing Workplace Harassment – For Non-Managers
- Emotional Intelligence
- Communicating Better with Your Team
- How to Handle Difficult Customers
- Personalizing the Customer Experience – Personality Driven Service Interaction

26

- Emotional Control
- Basics of Effective Communication
- Working with Difficult People: How to Work with Self-Serving People
- Financial Matters- Money 101 Seminar
- Delivering a Difficult Message with Diplomacy and Tact
- Basic Presentation Skills: Creating a Presentation
- Public Speaking Strategies: Preparing Effective Speeches
- Receiving Feedback and Criticism

APPENDIX 057

## EXHIBIT B
## List Of Cases

**D'Marius Dobbins v. Experian Information Solutions,** U.S. District Court, Western District of Oklahoma; Case # 5:24-cv-01030 JD (Expert Report)

**Kierra Machae Dunmore v. Experian Information Solutions Inc et al,** U.S. District Court, Northern District of Indiana, Hammond Division; Case # 2:24-cv-00225 PPS-JEM (Expert Report)

**Joseph Piros v. Experian Information Solutions Inc et al,** U.S. District Court, Central District of California; Case # 824-cv-00278 KES (Rebuttal Expert Report)

**Jena Miller v. Experian Information Solutions Inc et al,** U.S. District Court, District of Minnesota; Case # 24-cv-03177 DSD-DLM (Expert Report)

**Michael R. Libbra v. Experian Information Solutions Inc et al,** U.S. District Court, Central District of Illinois; Case # 23-cv-3298 (Expert Report, Expert Deposition Testimony)

**Jorge Espinoza v. Experian Information Solutions Inc et al,** U.S. District Court, Eastern District of California, Case # 2:24-cv-00465-JAM-DB (Expert Report, Expert Deposition Testimony)

**Ramon Espinosa v. Experian Information Solutions Inc,** U.S. District Court, Eastern District of Virginia, Case # 1:23-cv-1444 (Deposition Testimony 30(b)(6), Arbitration Testimony)

**Carolina Madera v. Experian Information Solutions Inc et al,** U.S. District Court, Southern District of California, Case # 23-cv-2124-RBM-BGS (Arbitration Testimony)

**Ronald Alexander Garcia Delgado v. Experian Information Solutions Inc,** U.S. District Court, Eastern District of Texas, Case #4:24-cv-00637 (Expert Report; Expert Deposition)

**Nicholas Cline v. Experian Information Solutions Inc et al,** U.S. District Court, Southern District of Indiana, Indianapolis Division, Ca1:22-cv-02021 (Rebuttal Expert Report)

**Cheryl Butler-Adams v. Experian Information Solutions Inc et al,** U.S. District Court, District of Nevada, Case # 2:23-cv-01058 (Expert Report)

**Hannah Lewis-Marlow v. Experian Information Solutions Inc,** U.S. District Court, Northern District of Georgia, Case # 1:23-cv-1927 (30(b)(6) Deposition Testimony)

**Ivan Speights v. Experian Information Solutions Inc,** U.S. District Court, Western District of Texas, Case # 6:24-CV-00073-ADA-DTG (30(b)(6) Deposition Testimony)

**Ernest Lee Duncan v. Experian Information Solutions Inc,** JAMS Arbitration, # 5410000458 (Arbitration Testimony)

**Trevan Creason v. Experian Information Solutions Inc,** U.S. District Court – Paducah Division, Western District of Kentucky, No. 5:21-cv-00039-BJB-LLK (Expert Report & Deposition Testimony)

**Tamara Allen v. Experian Information Solutions Inc et al,** U.S District Court – McAllen Division, Southern District of Texas #4:23-CV-3406 (Expert Report)

**Demetre Durham v. Experian Information Solutions Inc,** U.S District Court – District of Hawaii #1:23-CV-00255 (Expert Report)

**Jamaal Nelson v. Experian Information Solutions Inc,** U.S District Court – District of South Carolina,  #2:23-CV-01634-RMG (Expert Report)

**Arne Mijne v. Experian Information Solutions Inc,** U.S District Court – Southern District of Florida, 1:23-cv-22694-CMA (Deposition Testimony)

**Crystal Lovelady v. Experian Information Solutions Inc et. al,** U.S District Court -District of Arizona, 1:23-cv-136-TUC-SHR (Expert Report)

**Victoria Tountas and Shlomo Harnas v. Experian Information Solutions Inc et. al,** Summit County, District Court of Colorado, JAMS Arbitration, Case #5240000614 (Deposition Testimony)

**Zavian Allen v. Experian Information Solutions Inc,** U.S. District Court – Sherman Division, TX 4:22-CV-00128-ALM (Deposition Testimony)

**Eunice Hernandez v. Trans Union, LLC et al,** U.S. District Court – Beaumont Division, TX 4:22-CV-00455 (Deposition Testimony)

**Freddie Williams v. Experian Information Solutions, Inc,** U.S. District Court, Eastern Division of Virginia, Newport News Division, 4:22-cv-92 (Deposition Testimony)

**Tierra Leann Myers v. Experian Information Solutions, Inc and Auto Now Financial Services Inc.,** U.S. District Court, District of Arizona 1:23-cv-01901-PHX-CDB

**Chang Liu v. Equifax Information Services, LLC. et. al,** U.S District Court, District of Massachusetts, 1:22-cv-10638-ADB (Expert Report, Expert Deposition Testimony)

**Robert Garcon v. Experian Information Solutions, Inc. et. al,** U.S District Court, Southern District of New York, 1:22-cv-01169-ER (Expert Report)

**Christian Everett v. Trans Union LLC. et. al,** U.S. District Court, Northern District of Georgia, #1:22-CV-1066 (Deposition Testimony)

**Shane Young v. Experian Information Solutions, Inc. et. al,** U.S. District Court, Northern District of Illinois, 3:22-cv-50222 (Deposition Testimony)

**Anthony Sunseri v. Experian Information Solutions, Inc. et. al,** Central District of California, 2:20-cv-08932-MCS (Deposition Testimony)

**Henry Losch v. Experian Information Solutions, Inc. et. al,** U.S. District Court, Middle

District of Florida, 2:18-cv-00809-UA-MRM (Trial Testimony)

**Eva Coronel v. Experian Information Solutions, Inc. et. al,** Superior Court of New Jersey, PAS-L-001699-19 (Deposition Testimony)

**Virgil Campbell v. Experian Information Solutions, Inc. et. al,** U.S District Court, District of Minnesota, 0:20-cv-02498-DSD-BRT (Deposition Testimony)

**Edward Coleman v. Experian Information Solutions, Inc. et. al,** U.S District Court, Northern District of Georgia, 1:21-cv-1095 (Deposition Testimony)

**Paul April v. Experian Information Solutions, Inc. et. al,** U.S District Court, Northern District of California, 4:20-cv-8567 DMR (Deposition Testimony)

**Scott Huffman v. Experian Information Solutions, Inc. et. al,** U.S District Court, Northern District of California, 3:19-cv-07408 DMR (Expert Report)

**Tasha Daigle v. Experian Information Solutions, Inc. et. al,** U.S District Court, Middle District of Louisiana, 3:18-cv-00783-SDD-EWD (Expert Report)

**Manual Alvarez v. Experian Information Solutions, Inc. et. al,** U.S. District Court, Eastern District of New York, 2:19-cv-3343-JS-SIL (Deposition Testimony)

**Curtis Manley v. Experian Information Solutions, Inc.** U.S. District Court, Eastern District of Virginia, 3:19-cv-302 (Deposition Testimony)

**Catherine Nichols v. Experian Information Solutions, Inc. et. al,** U.S. District Court, District of Nevada, 17-cv-2337- APG-GWF (Deposition Testimony)

**Hannah Weinstein v. Experian Information Solutions, Inc. et. al.,** U.S. District Court, Central District of California, 2:17-cv-8704 FFM (Expert Rebuttal Report, Deposition Testimony)

**Larry Pruitt v. Experian Information Solutions, Inc. et. al.,** U.S. District Court, Eastern District of Pennsylvania, 2:18-cv-00409 (Expert Report)

**Crickett Austin v. Experian Information Solutions, Inc. et. al,** U.S. District Court, District of Massachusetts, 1:18-cv-10699- FDS (Deposition Testimony)

**Louis A. Cardinali v. Experian Information Solutions, Inc. et. al,** U.S. District Court, District of Nevada, 2:16-cv-02046-JAD-NJK (Deposition Testimony)

**Sheila Price v. Experian Information Solutions, Inc.,** U.S. District Court, Central District of California, 18-cv-00340-KES (Deposition Testimony)

**Carol Mainor v. Experian Information Solutions, Inc. et. al,** U.S. District Court, District of Nevada, 2:16-cv-00183-RFB-PAL (Deposition Testimony)

**David Leoni v. Experian Information Solutions, Inc. and Military Star,** U.S. District Court, District of Nevada, 2:17-cv-01408-RFB-VCF (Expert Report, Rebuttal Expert Report, Deposition Testimony)

**William Taylor v. Experian Information Solutions, Inc.,** U.S. District Court, District of Missouri, 4:17-cv-00591-ODS (Expert Report)

**Jeffrey G. Sloane v. Experian Information Solutions, Inc.,** U.S. District Court, District of Nevada, 2:17-cv-1117-RFB-VCF (30(b)(6) (Deposition Testimony)

**Thomas Foskaris v. Experian Information Solutions, Inc.,** U.S. District Court, District of Nevada, 2:17-cv-00506-KJD-PAL (30(b)(6) (Deposition Testimony)

**Daniel Yates v. Experian Information Solutions Inc.** United States District Court, Western District of Texas, 1:16-cv-1091 (Rebuttal Expert Report, Deposition Testimony)

**Daniel Hines v. Experian Information Solutions Inc., et. al** United States District Court, Western District of Washington, 2:16-CV-00881-TSZ (Rebuttal Expert Report)

**Sean and Christine Miller v. Ditech Financial LLC f/k/a Green Tree Servicing LLC; et al.,** United States District Court, Western District of Kentucky, 1:16CV-133-GNS (Expert Report)

**Charles Tulowetzke v. Experian Information Solutions, Inc.,** U.S. District Court, Eastern District of Virginia, 1:16-CV-1431-TSE/TCB (30(b)(6) Deposition Testimony)

**Tomasz Kaczor v. Ocwen Loan Servicing, LLC, Experian Information Solutions, Inc.,** U.S. District Court, Northern District of Illinois, Eastern Division, 15-cv-5545 (Affidavit)

**Christopher Merz v. Equifax Information Services, LLC, Experian Information Solutions, Inc, TransUnion LLC, and Merchants & Medical Credit Corporation Inc.,** United States District Court, Eastern District of Michigan, Southern Division, 2:15-cv-13088 (Affidavit)

**Ronald Ricketson Jr. v. Credit Acceptance Corp, Experian Information Solutions, Inc,** State of Michigan, 17th Judicial District Court, 16-07986 (30(b)(6) Deposition Testimony)

**Erik M. Hansen v. Bank of America NA and Experian Information Solutions, Inc,** United States District Court, District of Kansas, 2:16-cv-02629-JAR-GLR (30(b)(6) Deposition Testimony)

**Patricia McCurry v. Bank of America NA, Chase Bank USA NA, Ocwen Loan Servicing LLC, Select Portfolio Servicing Inc, Equifax Information Services LLC, and Experian Information Solutions, LLC,** United States District Court, District of Nevada, 2:16-cv-00191- RFB-PAL (30(b)(6) Deposition Testimony)

**William Florence v. Real Time Resolutions Inc, et. al.,** United States District Court, District of Nevada, 2:16-cv-00692-APG-GWF (30(b)(6) Deposition Testimony)

**John F. Halbleib v. Selene Finance LP and Experian Information Solutions Inc.,** United States District Court, Northern District of Illinois, 1:15-cv-11141 (30(b)(6) Deposition Testimony)

**Margaret Z. Barszczewska v. JPM Chase, PlusFour Inc, Select Portfolio Servicing Inc, Bank of America, National Association, Equifax Information Services LLC, Experian Information Solutions Inc, and TransUnion, LLC,** United States District Court, District of

APPENDIX 061

Nevada, 2:16-cv-00583-APG-CWH (30(b)(6) Deposition Testimony)

**Charlotte Walsh v. Onewest Bank, Ocwen Loan Servicing, LLC, Ally Financial, Equifax Information Systems, LLC and Experian Information Solutions Inc.,** United States District Court, District of Nevada, 2:16-cv-00339-GMN-CWH (30(b)(6) Deposition Testimony)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 22, 2025, I have caused a true and correct copy of the above and foregoing to be served via email upon all counsel of record.

Dated: October 22, 2025

Respectfully submitted,

*/s/ Chance B. McCraw*
Chance B. McCraw
JONES DAY
2727 North Harwood St.
Dallas, TX 75201
Telephone: 214.969.4563
Facsimile: 214.969.5100
cmccraw@jonesday.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*

APPENDIX 062

# EXHIBIT 4

**James Ristvedt**

| | |
|---|---|
| **From:** | Anthony, Rebecca W. <ranthony@jonesday.com> |
| **Sent:** | Wednesday, December 17, 2025 11:53 AM |
| **To:** | James Ristvedt |
| **Cc:** | David Chami; Youssef H. Hammoud; Mehak Rizvi; Shaun Pambid; Douglas, Camden L.; Zion Levi |
| **Subject:** | RE: Find Consumer DRDD Proposal |

James – For the benefit of allowing you more time to prepare your revised motion, Experian will not agree.  We maintain, as I've outlined before, that there are other ways that Plaintiff can obtain information regarding the reasonableness of Experian's matching procedures and assess/argue the reasonableness of those procedures without the production of the DRDD.  The risk of harm—which I outlined last night—from disclosure of the document is not proportional to the needs of this case.

And, in any case, I understand that Experian's algorithm is designed to assure maximum possible accuracy, thus I cannot agree to what I understand to be an untrue (and highly relevant) stipulation.

Please let me know if you have questions or would like to discuss further.

Thanks,
Rebecca

Rebecca Wernicke Anthony
Partner
**JONES DAY® - One Firm Worldwide℠**
2727 North Harwood Street
Dallas, Texas  75201
Office +1.214.969.4886
Cell +1.817.975.2885
ranthony@jonesday.com

---

**From:** James Ristvedt <jristvedt@consumerjustice.com>
**Sent:** Wednesday, December 17, 2025 12:32 PM
**To:** Anthony, Rebecca W. <ranthony@jonesday.com>
**Cc:** David Chami <Dchami@consumerjustice.com>; Youssef H. Hammoud <yhammoud@thecreditattorney.com>; Mehak Rizvi <mrizvi@consumerjustice.com>; Shaun Pambid <spambid@consumerjustice.com>; Douglas, Camden L. <cdouglas@jonesday.com>; Zion Levi <zlevi@thecreditattorney.com>
**Subject:** RE: Find Consumer DRDD Proposal

Rebecca,

Correct. At this time, this would be limited to the existing, ongoing dispute in *Ramirez Najera* in an effort to resolve this matter before we need to file our renewed/amended motion on the 19th.

Warmest regards,

James Ristvedt, Esq. | Managing Attorney & Trial Counsel
**Consumer Justice Law Firm**
D: 480-626-1956 | F: 480-613-7733

1

E: jristvedt@consumerjustice.com | W: www.consumerjustice.com
A: 8095 N. 85th Way, Scottsdale, AZ 85258

**LICENSED:** States of Arizona, Florida
**DISTRICT COURTS:** AZ, CO, FL, IN, MI, NM, OK, TN, TX
**CIRCUIT COURTS OF APPEAL:** 3rd, 5th, 9th, 11th

**CONFIDENTIALITY NOTICE:** This email and all attachments transmitted with it are intended solely for the use of the addressees and may contain legally privileged, protected, or confidential information. If you have received this message in error, please notify the sender immediately by email reply and please delete this message from your computer and destroy any copies.

---

**From:** Anthony, Rebecca W. <ranthony@jonesday.com>
**Sent:** Wednesday, December 17, 2025 11:30 AM
**To:** James Ristvedt <jristvedt@consumerjustice.com>
**Cc:** David Chami <Dchami@consumerjustice.com>; Youssef H. Hammoud <yhammoud@thecreditattorney.com>; Mehak Rizvi <mrizvi@consumerjustice.com>; Shaun Pambid <spambid@consumerjustice.com>; Douglas, Camden L. <cdouglas@jonesday.com>; Zion Levi <zlevi@thecreditattorney.com>
**Subject:** RE: Find Consumer DRDD Proposal

James – Thanks for your email.  Just so I understand, I assume your proposal relates to the Ramirez-Najera case only, and does not relate to any other current or future case in terms of your agreement not to pursue the production of the DRDD?

Rebecca Wernicke Anthony
Partner
**JONES DAY® - One Firm Worldwide℠**
2727 North Harwood Street
Dallas, Texas  75201
Office +1.214.969.4886
Cell +1.817.975.2885
ranthony@jonesday.com

---

**From:** James Ristvedt <jristvedt@consumerjustice.com>
**Sent:** Wednesday, December 17, 2025 12:27 PM
**To:** Anthony, Rebecca W. <ranthony@jonesday.com>
**Cc:** David Chami <Dchami@consumerjustice.com>; Youssef H. Hammoud <yhammoud@thecreditattorney.com>; Mehak Rizvi <mrizvi@consumerjustice.com>; Shaun Pambid <spambid@consumerjustice.com>; Douglas, Camden L. <cdouglas@jonesday.com>; Zion Levi <zlevi@thecreditattorney.com>
**Subject:** Find Consumer DRDD Proposal

Rebecca,

We have discussed Experian's objections to producing the Find Consumer DRDD and have a proposal we would like to discuss with you in order to obviate the need for further motion practice in this case.

Experian has communicated its position that it objects to producing the DRDD under any circumstances. While we maintain that production is appropriate and proportional to the needs of the case, we are interested in crafting a resolution that alleviates Experian's concern about production of the DRDD in this case while also alleviating Plaintiff's primary concerns stemming from non-production.

2

APPENDIX 065

Plaintiff is willing to forego any further pursuit of production of the DRDD if Experian is willing to stipulate that it will not argue that the rules in the DRDD achieve maximum possible accuracy. If Experian is unwilling to so stipulate, we will be forced to seek production of the DRDD in order to be able to effectively respond to Experian's defense. Our position is relatively straightforward: without the ability to evaluate the rules that Experian is relying upon in forming its defense, Plaintiff will be irreparably prejudiced because it will frustrate Plaintiff's ability to materially respond to that defense.

Given the Court's instructions to the parties concerning the meet and confer process and doing everything that we can to avoid any unnecessary motion practice, we are proposing this stipulation in hopes that we can resolve this issue without being forced to renew and amend our motion to compel. However, if Experian intends to make reliance on those rules a central part of its defense and will not agree to the above stipulation, we have no choice but to make every effort to be able to respond to that defense.

Please let me know your client's position as to this proposal.

Warmest regards,

James Ristvedt, Esq. | Managing Attorney & Trial Counsel
**Consumer Justice Law Firm**
D: 480-626-1956 | F: 480-613-7733
E: jristvedt@consumerjustice.com | W: www.consumerjustice.com
A: 8095 N. 85th Way, Scottsdale, AZ 85258

LICENSED: States of Arizona, Florida
DISTRICT COURTS: AZ, CO, FL, IN, MI, NM, OK, TN, TX
CIRCUIT COURTS OF APPEAL: 3rd, 5th, 9th, 11th

CONFIDENTIALITY NOTICE: This email and all attachments transmitted with it are intended solely for the use of the addressees and may contain legally privileged, protected, or confidential information. If you have received this message in error, please notify the sender immediately by email reply and please delete this message from your computer and destroy any copies.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT 5

Case 4:25-cv-00443-P    Document 105    Filed 12/19/25    Page 70 of 71    PageID 1097

Victor Manuel Ramirez Najera vs. Experian Information Solutions Inc. -
30(b)(1) Experian Information Solutions, Inc. - Timothy Sumida

November 18, 2025

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

)
VICTOR MANUEL RAMIREZ NAJERA,    )
                                 )
        Plaintiff,               )
                                 )  Case No.:
v.                               )   4:25-cv-00443-P
                                 )
EXPERIAN INFORMATION SOLUTIONS,  )
INC.; APPFOLIO, INC.; and        )
NATIONSTAR MORTGAGE, LLC d/b/a    )
RUSHMORE SERVICING,              )
                                 )
        Defendants.              )
_____)

30(b)(1) VIDEOCONFERENCE DEPOSITION OF
EXPERIAN INFORMATION SOLUTIONS, INC.
BY TIMOTHY SUMIDA

Yorba Linda, California

November 18, 2025

Prepared by:

Daniel Rohan, CER
Certified Electronic Reporter
CER No. 4137

**CERTIFIED TRANSCRIPT**

A.  Yes, it'll -- it'll include that in the report.

Q.  And knowing enough about Experian's systems, am I correct in assuming that is like some sort of code as opposed to saying, in plain language, here's what the rule was?

MS. ANTHONY:  Object to the form.

THE WITNESS:  It's been a while since I ran this, but I think it would look similar to how the rule is presented in the document.  But, you know, I . . .

BY MR. RISTVEDT:

Q.  And when you say "the document," you're talking about that Find Consumer DRDD?

A.  Yes.

Q.  Okay.  Does the DRDD contain sort of additional information about each code, in other words, provide kind of details just beyond the name of the code?

A.  It doesn't really refer to the name of the code. It -- it provides the requirements, and then the code is intended to match the requirement.  So this -- it doesn't contain code.

Q.  So match details -- if I were just looking at the match details result, to the extent I could understand what it refers to, it's in plain language as opposed to, like, a code or a number, something like that?

MS. ANTHONY:  Object the form.

Coash Court Reporting & Video, LLC
staff@coashcrv.com
602-258-1440
www.CoashCourtReportingandVideo.com