UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**VICTOR MANUEL RAMIREZ NAJERA,**

    Plaintiff,

    v.　　　　　　　　　　　　　　　**No. 4:25-cv-00443-P**

**EXPERIAN INFORMATION SOLUTIONS, INC.,**

    Defendant.

## OPINION & ORDER

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment and Plaintiff Victor Manuel Ramirez Najera's ("Ramirez") Partial Motion for Summary Judgment. ECF Nos. 109, 114. Having considered the briefing and evidence of record, the Court will **DENY** Ramirez's Partial Motion for Summary Judgment (ECF No. 114), and **GRANT** Experian's Motion for Summary Judgment (ECF No. 109).

## BACKGROUND

Experian is a credit reporting agency ("CRA") under 15 U.S.C. § 1681a(f). ECF No. 110 at 3. It does not originate or create credit information. ECF No. 110 at 3. Instead, Experian receives credit information from various creditors and lenders, known as "furnishers." ECF No. 110 at 14. This information is subject to industry standards, ensuring the information provided is sufficient to correctly match consumers' accounts. ECF No. 135 at 7. Experian requires at least three out of four pieces of information to be reported by furnishers. ECF No. 142 at 1.

Experian uses a database to compare, analyze, and match the identification information in a credit report with the information supplied by furnishers. ECF No. 135 at 5. Its database sorts through millions of credit items. Experian considers first name, middle name, first last name, second last name, generation code, address, date of birth, and social security number. ECF No. 135 at 1. Experian also uses other identification information, reported about consumers, over time, such as prior nicknames, names, or variations. ECF No. 111 at 4. An algorithm (the "matching algorithm") reviews this information for similarities and conflicts. ECF No. 135 at 6. After the matching process, Experian's database assembles a credit report. ECF No. 135 at 6. The process is subject to both automated and manual quality controls to detect possible errors or inaccuracies. ECF No. 135 at 6.

Its policies and procedures must be able to "accommodate and allow changes and variations in items of information" over a consumer's lifetime. ECF No. 110 at 5. These include name changes after marriage or address changes after moving. ECF No. 110 at 5. Experian's procedures must be flexible enough to match accounts when there are typos or a consumer's identifying information is inaccurately entered by a data furnisher. ECF No. 110 at 5. Without this flexibility, Experian's ability to assemble complete credit reports in its database would be hindered. "Millions of consumers would be likely to have incomplete or fragmented files." ECF No. 110 at 5.

At times, the matching algorithm results in a "mixed file." ECF No. 111 at 4. A mixed file occurs when credit information from two different consumers appears in one credit file. ECF No. 115 at 12. When this issue arises, consumers can submit different types of disputes. ECF No. 115 at 12–14.

Ramirez applied to an apartment complex, Hartford House, in or around May 2023. ECF No. 1 at 25. A Tenant Screening Report was prepared and provided to the complex. ECF No. 1 at 25. The report contained Ramirez's correct date of birth and credit information obtained from Experian. ECF No. 1 at 26. The report listed a mortgage account ("Rushmore Mortgage") from Rushmore Loan Management Services, which was transferred from PennyMac. ECF No. 1 at 26. But

Ramirez had no prior mortgage. ECF No. 1 at 26. The account was opened on January 27, 2009, when Ramirez was 13 years old, and it showed a late payment history. ECF No. 1 at 26. Also on the credit report were three other negative accounts that belong to Ramirez. ECF No. 135 at 21. One was a collection account, one had a past due balance, and a third account that was "charged off."[1] ECF No. 135 at 21. The report also shows that the PennyMac account was never delinquent. ECF No. 135 at 21.

The Rushmore Mortgage account belonged to Ramirez's father. ECF No. 110 at 1. Ramirez often dropped his second last name, Najera, when applying for credit, and he did not use a generational identifier, "Jr.," either. ECF No. 110 at 5. As a result, both Ramirez and his father often use identical names, first, middle, and last, when applying for credit. ECF No. 110 at 1. They also both used the same address. ECF No. 110 at 1. Ramirez's father does not have, and has never had, a Social Security number. ECF No. 110 at 1.

After discovering the mortgage on the credit report, Ramirez disputed the report ("First Dispute") around March 2024. ECF No. 1 at 27; ECF No. 115 at 2. He called Experian and stated that two accounts did not belong to him: the Rushmore Account and a PennyMac Account. ECF No. 110 at 6–8. No further information was provided. ECF No. 135 at 9. Experian sent automated consumer dispute verifications ("ACDV") to the furnishers, Rushmore and PennyMac, with information that Ramirez disputed that the accounts were his. ECF No. 135 at 10. Both furnishers verified the account. ECF No. 135 at 9. Rushmore verified the account with information identical to Ramirez's. ECF No. 135 at 10. So, Experian continued to report the Rushmore account. ECF No. 135 at 10. However, because PennyMac provided information that did not match Ramirez's, Experian removed that account from Ramirez's file. ECF No. 135 at 10.

---

[1]To "charge off" is to treat an account "as a loss or expense because payment is unlikely." Charge Off, BLACK'S LAW DICTIONARY (10th ed. 2014). A charged-off account, in other words, is "bad debt." *Id.*

Ramirez again disputed the report ("Second Dispute") around July 2024, stating that he had never taken out a mortgage and that the report was inaccurate. ECF No. 1 at 27. Ramirez provided his birth certificate and his school records to show he was a minor at the time the mortgage was opened. ECF No. 1 at 27. Ramirez also provided information that the account in question belonged to his father. ECF No. 135 at 11. Experian responded to the dispute and again sent an ACDV to Rushmore. ECF No. 135 at 11. Rushmore once again verified the information. ECF No. 135 at 11. The account continued to be reported. ECF No. 135 at 11.

Experian received a third dispute on May 28, 2025. ECF No. 110 at 9. Experian responded on June 11, 2025, deleting the disputed account. ECF No. 110 at 9. However, when the Rushmore Mortgage was removed from his credit report, Ramirez's score dropped by five points. ECF No. 110 at 10.

In his suit, Ramirez asserts that he has suffered damages due to the credit reports. ECF No. 1 at 30. First, he testifies to "harm to his overall creditworthiness" due to Experian's continued reporting of the Rushmore Mortgage. ECF No. 115 at 44. Ramirez also claims that the reporting caused him mental pain and anxiety. ECF No. 115 at 44. He had headaches, which resulted in an emergency room visit. ECF No. 115 at 44.

Ramirez sued Experian for mixing his files under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i, initiating this action on April 22, 2025. ECF No. 1 at 30, 32. His § 1681e(b) claim alleges that Experian did not follow reasonable reporting procedures. Meanwhile, Ramirez's § 1681i claim alleges that Experian failed to reasonably investigate his disputes.

Ramirez also testified to feelings of embarrassment; feeling sick to his stomach, tired, and "[unable] to function at one hundred percent"; his life was put on pause; and he suffered through sleepless nights. ECF No. 115 at 44. He also maintains that he was denied credit applications. ECF No. 115 at 44. In addition to the rental application, Ramirez was denied a J.P. Morgan Chase Card twice. ECF No. 135 at 43. First, in April 2024, and then later in January 2025. ECF No. 135 at 43. He also

4

alleges that he was denied credit from Greensky Installment in June 2025. ECF No. 135 at 44. Ramirez has no letter or other evidence to show these denials. ECF No. 135 at 43–44. Further, any denial of the Greensky account was after the PennyMac and Rushmore Accounts had been removed.

After discovery, Experian moved for Summary Judgment on all claims on December 21, 2025. ECF No. 109. Ramirez moved for Partial Summary Judgment on December 22, 2025. ECF No. 114. The Court now considers those motions.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). The Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

5

## ANALYSIS

Experian seeks summary judgment on Ramirez's claims that it negligently and willfully violated provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Meanwhile, Ramirez seeks summary judgment on the claims that Experian willfully violated § 1681e(b) and § 1681i; that Ramirez sustained actual damages; and that Experian's violations of the FRCA caused Ramirez's actual damages. ECT No. 114 at 1.

### A.   Reporting Inaccuracy

The threshold inquiry for both § 1681e(b) and § 1681i claims is whether there was an inaccurate entry on a credit report. *See Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) ("We join the other circuits in concluding that inaccuracy is a threshold requirement for § 1681i claims."); *Warner v. Equifax Info. Servs. LLC*, No. 3:23-CV1286-E, 2025 WL 714243, at *3 (N.D. Tex. Feb. 11, 2025) ("To prevail on a claim under either Section 1681e(b) or Section 1681i, [a plaintiff] must prove that [his] consumer reports included inaccurate information.") (internal quotation marks and citations omitted).

Generally, an item of information is "inaccurate" within the meaning of the FCRA "either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Reyes*, 140 F.4th at 285 (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). Here, it is not disputed that inaccurate information was included on Ramirez's credit report. His father's mortgage was reported on his credit report, satisfying the first elements for both § 1681e(b) and § 1681i. So, the case turns on other elements of Ramierz's claims.

### B.   Section 1681e(b)

Section 1681e(b) requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" when preparing a credit report. § 1681e(b). However, this provision "does not hold a CRA strictly liable for all inaccuracies." *Hammer v.*

*Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020), *aff'g sub nom. Hammer v. Equifax Info. Servs., LLC*, No. 3:18-CV-1502-C, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019). To prevail under a § 1681e(b) claim, a plaintiff "must establish that (1) inaccurate information was included in his credit report; (2) the inaccuracy was due to [defendant's] failure to follow reasonable procedures to assure maximum possible accuracy; (3) [plaintiff] suffered injury; and (4) his injury was caused by the inclusion of the inaccurate entry." *Hammer*, 2019 WL 7602463, at *2.

### 1. Willful Violation

Both Ramirez and Experian seek summary judgment on the issue of whether Experian willfully violated § 1681e(b). To prove that Experian's violation of § 1681e(b) was negligent, Plaintiff must prove actual damages. 15 U.S.C. § 1681o. On the other hand, to prove a willful violation, Plaintiff must prove that the consumer reporting agency "willfully fail[ed] to comply with any requirement imposed" by the FCRA. 15 U.S.C. § 1681n(a).

In interpreting "willful," the Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation." *Safeco Inc. Com. Of Am. v. Burr*, 551 U.S. 47, 71 (2007). This standard requires a showing that "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69–70. Under Fifth Circuit law, damages for willfulness are appropriate only on evidence of "willful misrepresentations or concealments" beyond mere negligence. *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 374 (5th Cir. 2001).

Ramirez makes two arguments that Experian acted willfully. Both miss the mark. *First*, Experian acted willfully because of the system it uses. The use of a matching system based on name and address only, without requiring a Social Security number or date of birth to match credit information, constitutes a "willful misrepresentation[] or concealment[]." *Stevenson*, 987 F.2d at 293. Ramirez does not present

any other evidence to show that Experian made willful misrepresentations or concealments regarding his credit history, such as purposely excluding or ignoring his Social Security number to match the accounts. The Fifth Circuit has not held that failing to require a Social Security number as identifying information to match credit accounts amounts to be a willful violation. This Court is not inclined to make such a ruling on this record.

*Second*, Ramirez argues that because Experian received notice of the danger of these procedures "more than 30 years ago," any subsequent violations qualify as "knowing violations." Ramirez relies on a 1991 Consent Order and a 1993 case, both involving Experian's predecessor, to show that Experian was aware that its procedures were "loose" and "harmful." *F.T.C. v. TRW Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991); *see Stevenson*, 987 F.2d at 293. This argument assumes that Experian's procedures are the same today as they were in 1991, with no modifications. However, Experian has presented evidence that these procedures were updated in 2008 and 2018. Thus, the argument that Experian was on notice that its procedures were unreasonable has no footing and cannot be used to prove willful conduct.

Because Ramirez fails to point the Court to any evidence that establishes a willful violation of § 1681e(b), there is no genuine dispute as to a material fact as to whether Experian willfully violated § 1681e(b).

## 2. Reasonableness

Experian seeks summary judgment on the issue of whether it followed reasonable procedures to ensure maximum possible accuracy. It argues that Ramirez presented no evidence raising an issue of material fact as to the reasonableness of the procedures. The Court agrees.

The adequacy of the consumer reporting agency's procedures is judged according to what a reasonably prudent person would do under the circumstances. *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982). "[T]he Fair Credit Reporting Act does not impose strict liability for inaccurate entries." *Sepulvado*, 158 F.3d at 896. In other words, because § 1681e(b) is not a strict liability statute,

evidence of the inaccuracy in Ramirez's consumer report, alone, is insufficient evidence that Experian's procedures were not reasonable. *See id.*; *see also Garrett v. Experian Info. Sols., Inc.*, 785 F. Supp. 3d 1077, 1082 (N.D. Fla. 2025) ("[I]f simply showing a mix-up were sufficient to prove unreasonableness, the statute would effectively provide for strict liability."). Ramirez must show something more than just the inaccuracy to prove the violation.

While reasonableness is normally a question for the jury, the Fifth Circuit has not precluded district courts from determining whether procedures in the credit reporting context are reasonable. *Cousin*, 246 F.3d at 368; *see also Matise v. Trans Union Corp.*, No. 3:96-CV-3353-D, 1998 WL 872511 (N.D. Tex. Nov. 30, 1998) (conducting an inquiry into whether a CRA used reasonable procedures); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733 (S.D. Tex. 2006), *aff'd*, 224 F. App'x 415 (5th Cir. 2007) (same). Additionally, other circuits have held that a credit reporting agency is not liable under the FCRA if it followed reasonable procedures to assure maximum possible accuracy but reported inaccurate information in the consumer's credit report. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004); *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1107 (8th Cir. 2022).

In *Sarver*, the court looked at the defendant's recounting of their procedures. *Sarver*, 390 F.3d at 972. Given the massive amounts of information, the complex system they used, and the information required to link consumer credit reported, the court found that "even with safeguards in place, mistakes can happen. But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable." *Id*.

The same reasoning applies here. In its briefing, Experian recounts its procedures for matching consumer and credit information. Experian sorts through millions of credit items. When determining what items should be displayed on a credit report, Experian's computer system compares, analyzes, and matches the identification information provided in the credit inquiry with the identification information that was reported with and linked to the millions of credit items in its database. After this matching process, Experian's database assembles a

9

credit report. The process is subject to both automated and manual quality controls to detect possible errors or inaccuracies.

Kimberly Cave, Experian's Director of Litigation Support, also testified to the need to have room for flexibility. Its policies and procedures must be able to "accommodate and allow changes and variations in items of information" over a consumer's lifetime, such as a name change after marriage or a new address after moving. ECF No. 110 at 5. Further, these procedures must be flexible enough to match accounts when a consumer's identifying information is inaccurately entered by a data furnisher. ECF No. 110 at 5. Without this flexibility, Experian's ability to assemble complete credit reports in its database would be hindered. "Millions of consumers would be likely to have incomplete or fragmented files." ECF No. 110 at 5.

Ramirez posits that Experian's procedures were unreasonable because Ramirez was matched to an account belonging to his father based on name and address, without a Social Security number. While Ramirez's father had no Social Security number to report, the identifying information they both used on their credit applications was the same. Their first, middle, and last names were the same. Their addresses were also the same. Considering the vast amount of information the database sorts through and the flexibility required to match accounts to consumers, even some consumers without Social Security numbers, these procedures are not rendered unreasonable due to matching accounts without considering Social Security numbers when other identifying information matches. *See Garrett*, 785 F. Supp. 3d at 1082 (considering identifying information in a credit file mix-up "remarkably similar"); *Dunmore v. Experian Info. Sols. Inc.*, No. 2:24-CV-225-PPS-JEM, 2025 WL 2331036, at *2 (N.D. Ind. Aug. 13, 2025) (comparing identifying information in mixed files). Thus, there is no genuine dispute regarding whether Experian followed reasonable procedures to ensure maximum possible accuracy.

3. Damages and Causation

Even assuming *arguendo* that Experian's procedures were unreasonable, Ramirez's claims fail because he has not shown that the

10

inaccurate reporting caused his damages. Section 1681o authorizes a consumer to recover actual damages sustained from the consumer reporting agency's negligent violation of a requirement under FCRA. Actual damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses. *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983). These damages must be warranted by the evidence. *Pinner v. Schmidt,* 805 F.2d 1258, 1265 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022 (1987).

Ramirez asserts two types of damages caused by Experian's credit reporting: (1) economic damages in the form of credit and apartment denials, and (2) emotional distress.

### a.  Economic Damages

"A plaintiff asserting an FCRA claim has the burden of proving that his damages were caused by the defendant's violations of the FCRA." *Matise*, 1998 WL 872511, at *7; *see Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 435 (5th Cir. 2016). In the case of a credit denial, "[t]o meet this burden," the plaintiff must show that the inaccurate information contained in a [credit] report, *rather than other lines* in the [credit] report or a report from a different CRA, caused his injury." *Bacharach*, 827 F.3d at 435 (emphasis added). Further, to prevail on this claim, the plaintiff "must present evidence sufficient to raise a material fact question on the issue of whether the denial of [credit] was proximately caused by [the] alleged misreporting . . . ." *Wagner v. BellSouth Telecomm. Inc.*, 520 Fed. App'x 295, 298 (5th Cir. 2013); *see also Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *Matise*, 1998 WL 872511, at *7 (N.D. Tex. 1998).

### i.  Housing Applications

Ramirez asserts that he was denied an apartment while the PennyMac or Rushmore Accounts were included on his consumer report. Specifically, he claims that when he applied to live in the Hartford House Apartments in Nashville, Tennessee, he was denied because of Experian's reporting. Ramirez does not have the denial letter, but only the credit report generated with the application. Yet he points to "no

evidence that the denial" was actually *caused* by Experian. *Bacharach*, 827 F.3d at 435. The credit report reveals three other negative accounts that belong to Plaintiff, one of which was a collection account, one of which had a past due balance, and a third that was charged off. Further review of the report shows that the PennyMac account was never delinquent.

Ramirez has presented no evidence that any apartment denial was caused by Experian's reporting of his father's mortgage accounts on his consumer report, rather than these other negative accounts that belonged to him or some other reason, such as his employment history or reported income. Thus, Ramirez has not shown that Experian was the proximate cause of his apartment denial.

### ii.    Credit Lines

Ramirez also posits that he was denied multiple credit applications because of Experian's reporting. First, Ramirez alleges that he was denied a J.P. Morgan Chase Card in April 2024 and later in January 2025. Just as with the rental application, Ramirez has no evidence of the denial. Further, Ramirez fails to present any evidence that the PennyMac and Rushmore Accounts caused his denials, rather than the negative accounts that belonged to him.

Second, Ramirez alleges that he was denied credit with Greensky Installment because of Experian's reporting in June 2025. Again, Ramirez has no proof of the denial. In addition, Ramirez's consumer report from June 11, 2025, when Experian stopped reporting the PennyMac and Rushmore Accounts, reflects no inquiries relating to Greensky. Any denial by the Greensky account was after the PennyMac and Rushmore Accounts had been removed and thus could not have caused the denial. Therefore, Ramirez has not shown that Experian was the proximate cause of his credit denials.

Because Ramirez "must show that the inaccurate information contained in a [credit] report, rather than other lines in the [credit] report . . . caused his injury," *Bacharach*, 827 F.3d at 435, and he has failed to meet that burden, causation of any alleged economic damages has not been established.

### b. *Emotional Distress*

A plaintiff seeking emotional distress damages is required to present "evidence of a genuine injury." *Wagner*, 520 Fed. Appx. at 298. Such evidence must demonstrate a "degree of specificity, which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Id.; Cousin*, 246 F.3d at 371. In other words, the plaintiff must present more than their "own conclusory assertions about emotional distress." *Wagner*, 520 Fed. Appx. at 298.

After reviewing the record, Ramirez presented evidence that he suffered from (1) mental pain and anxiety associated with the loss of control; (2) physical manifestations of anxiety, resulting in headaches occurring multiple times per week; (3) feelings that Experian's inaccurate reporting was the "most embarrassing thing that's happened" to him; (4) feeling sick to his stomach, tired, "mind boggy," racing heart, sweaty palms, and inability to function at one hundred percent; (5) the stress of feeling in limbo like his life had been put "on pause"; and (6) sleepless nights multiple times per week. Ramirez has also presented affidavits and corroborating testimony.

Despite the evidence above, this testimony cannot support a damages award to the extent "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "where a version of events is so utterly discredited by the record that no reasonable jury could have believed him," it cannot prevent summary judgment). Here, Ramirez claims that Experian's reporting is the "most embarrassing thing that's happened" to him and it paused his life for a year because he could not get an apartment. However, as discussed below under "Creditworthiness," the summary judgment evidence demonstrates that removing the mortgage from the credit report *decreased* Ramirez's credit score. In other words, the falsely reported mortgage, albeit incorrect, actually *helped* Ramirez's credit score. Therefore, no reasonably jury could believe that an incorrect item on a credit report that helped the individual's credit score caused emotional distress.

13

### c. Creditworthiness

Ramirez asserts that he suffered harm to his overall creditworthiness because of the inaccurate reporting of the Rushmore account. But harm to credit eligibility by itself is not a cognizable injury under the law. *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317–18 (5th Cir. 2012) (noting that "[t]he real damage from an erroneously reduced credit rating, which causes lower available borrowing limits, occurs if the consumer's cost of actual borrowing increases or he is refused credit altogether").

Contrary to Ramirez's argument, the evidence demonstrates that Ramirez's creditworthiness improved from Experian's reporting. When the PennyMac Account was included on Ramirez's report, it reflected no negative reporting. Similarly, reporting Rushmore Mortgage improved the plaintiff's credit score. On June 3, 2025, before the Rushmore Account was removed, Plaintiff had a FICO score of 645. A week later, on June 11, 2025, after the Rushmore Account was removed as requested by Plaintiff, Plaintiff's FICO score dropped to 640.

Thus, the evidence shows that, if anything, Plaintiff was helped by Experian's reporting the PennyMac account and Rushmore Mortgage in his credit file.

Accordingly, Ramirez fails to raise a dispute of material fact as to Experian's failure to follow reasonable procedures or as to a causal connection between his injury and Experian's inaccurate reporting. And having failed to raise a genuine issue as to a material fact on numerous elements, Ramirez's § 1681e(b) claim fails.

## C.   Section 1681i

### 1. Reasonable Investigation

Experian moves for summary judgment regarding its handling of Ramirez's first dispute, arguing that it complied with the requirements of § 1681i. The Court agrees.

To assert a claim under § 1681i, Ramirez must establish that (1) he disputed the accuracy of an item of information contained in his Experian consumer file and notified Experian directly of that dispute;

14

(2) Experian did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by § 1681i(a)(5) within 30 days of notice of the dispute; (3) Experian's noncompliance was negligent or willful; (4) Ramirez suffered injury; and (5) that injury was caused by Experian's failure to reinvestigate and record the current status of the disputed information or delete the item from the file. *Hammer*, 2019 WL 7602463, at \*2; *see also Reyes*, 140 F.4th at 285. The Fifth Circuit has held that the use of automated consumer dispute verifications ("ACDV") to reinvestigate consumer disputes is a reasonable method of investigation. *Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162 (5th Cir. 2020) ("[A] reporting agency's reliance on the ACDV system is generally acceptable.").

### a. First Dispute

Ramirez fails to demonstrate that Experian did not reinvestigate the First Dispute or committed any willful or reckless conduct in investigating the First Dispute. Ramirez called Experian and informed it that the Rushmore Account did not belong to him. He provided no other information. This satisfies the first requirement under § 1681i, requiring the consumer to submit a dispute.

After receiving this dispute, Experian sent ACDVs to both Rushmore and PennyMac, each containing information that Ramirez disputed. The PennyMac ACDV contained a different Social Security number and date of birth than Ramirez's. Thus, upon receipt of the PennyMac account ACDV, Experian stopped reporting the account.[2]

However, when Rushmore returned its ACDV with identical identifying information to Ramirez's, Experian continued to report the Rushmore Mortgage. The Fifth Circuit has noted that when the plaintiff

---

[2]Ramirez argues that Experian merely "parroted" the information that Experian received from its furnishers. However, the Court disagrees. When Experian received the PennyMac ACDV response, which "verified" that the account was Ramirez's, Experian deleted the account because of inconsistencies with Ramirez's identifying information. In other words, where Experian had reason to question the reliability of PennyMac's verification, it deleted the PennyMac Account.

gives no reason to show that CRA should have been on notice of a need to go beyond the ACDV system as to this dispute, failure to do so was not unreasonable. *Barron*, 802 F. App'x at 162 ("We agree with the district court that Barron has offered no reasonable factual basis for finding the defendants should have been on notice of a need to go beyond the ACDV system as to this dispute."). The same is true here. In the First Dispute, Ramirez gave no information to put Experian on notice that an investigation beyond an ACDV was necessary.

Therefore, Experian adequately reinvestigated Ramirez's First Dispute.

### b. Second Dispute

The same cannot be said for the Second Dispute. In his Second Dispute, Ramirez called Experian and informed it that the Rushmore Account did not belong to him. This time, he provided additional information. He sent Experian his birth certificate and his school records to show he was a minor at the time the mortgage was opened. This information should have notified Experian that it needed to go beyond the ACDV system. *Id.* However, Experian sent an ACDV to Rushmore, who verified the information. The account continued to be reported. Experian concedes that this should not have been the case. Ramirez thus satisfies the second requirement for failure to reinvestigate. So, Ramirez's claims once again turn on his damages and whether Experian's failure to reinvestigate caused those damages.

While Experian failed to reinvestigate the Second Dispute, Ramirez's § 1681i claim fails because he again fails to demonstrate that the inaccurate reporting caused his damages. As aforementioned, § 1681o authorizes a consumer to recover actual damages sustained from the consumer reporting agency's negligent violation of a requirement under FCRA. Actual damages include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses. *Fischl*, 708 F.2d at 151; *Pinner,* 805 F.2d at 1265. Ramirez asserts two types of damages caused by Experian's credit reporting: (1) economic damages in the form of credit and apartment denials, and (2) emotional distress.

A plaintiff asserting an FCRA claim must prove that his economic damages were caused by the defendant's violations of the FCRA. To do this, a plaintiff must show that the inaccurate information contained in a [credit] report, rather than other lines in the [credit] report or a report from a different CRA, caused his injury. *Bacharach*, 827 F.3d at 435.

For the same reasons as the § 1681e(b) claim, Ramirez's showing of his economic damages and emotional distress damages fails. He has not established that Experian was the proximate cause of his apartment or credit denials. While Ramirez presented specific evidence and corroborating testimony of his emotional distress, it cannot support a damages award to the extent "no reasonable jury could believe it." *Scott*, 550 U.S. at 380. No reasonable jury would believe that this was the "most embarrassing thing" or that it paused his life for a year because he could not get an apartment, when the evidence shows the reporting helped his creditworthiness.

Ramirez's claims that his creditworthiness suffered due to the inaccurate reporting also fail because the evidence demonstrates that Ramirez's creditworthiness improved from Experian's reporting.

While Ramirez has shown that Experian failed to reinvestigate his Second Dispute, he has not raised a causal connection between his injury and Experian's inaccurate reporting. Thus, Ramirez cannot show that Experian's failure to reinvestigate caused his claimed damages, and his § 1681i claim fails on the second dispute.

### 2. Willful Violation

Ramirez seeks summary judgment on the issue of whether Experian willfully violated § 1681i. Just as with his § 1681e(b) claim, to prove that Experian's violation of § 1681i was willful, Ramirez must prove that the consumer reporting agency "willfully fail[ed] to comply with any requirement imposed" by the FCRA. § 1681n(a).

Under Fifth Circuit law, damages for willfulness are appropriate only on evidence of "willful misrepresentations or concealments" beyond mere negligence. *Stevenson*, 987 F.2d at 293; *Cousin*, 246 F.3d at 374. A defendant acts willfully by "knowingly and intentionally commit[ting] an act in conscious disregard for the rights of others," "typically

misrepresent[ing] or conceal[ing] . . . a credit report from a consumer." *Cousin*, 246 F.3d at 372.

"A failure to adequately investigate and swiftly correct inaccurate information generally does not constitute a willful violation" of § 1681i. *Cameron*, 713 F. App'x at 240 (holding that "no evidence" that allegedly "insufficient procedures that facilitated the reporting of inaccurate information and delayed the process of correcting that information . . . were done knowingly and intentionally").

Here, Ramirez has presented no evidence that Experian acted with "willful misrepresentations or concealments." *Stevenson*, 987 F.2d at 293. He argues that Experian received notice of the danger of these procedures "more than 30 years ago" when the *Stevenson* District Court found willful noncompliance. 987 F.2d 288, 293 (5th Cir. 1993). But the Fifth Circuit overturned the finding of willful violations, 987 F.2d at 293 ("The district court's decision [finding a willful violation] was clearly erroneous."). It found there was "no evidence" of willful noncompliance. Thus, it cannot be said Experian was on notice, and thus any subsequent violation is willful.

Ramirez also asserts that an agent's mistake amounts to a knowing and intentional disregard. This is at most negligent conduct. Ramirez "never points to which of Experian's actions constituted willful noncompliance" in the reinvestigation of his disputes, nor does he analyze how Experian "knowingly and intentionally committed these actions." *Cameron*, 713 F. App'x at 240. So, as with the above claims, because Ramirez fails to point the Court to any evidence that establishes a willful violation of § 1681i, there is no genuine dispute as to a material fact as to whether Experian willfully violated § 1681i.

## CONCLUSION

For the above reasons, the Court concludes that Experian's Motion for Summary Judgment should be and hereby is **GRANTED**, and

18

Ramirez's Partial Motion for Summary Judgment is **DENIED**. Accordingly, Plaintiff's claims are **DISMISSED with prejudice**.[3]

**SO ORDERED** on this **26th day of March 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[3]With this ruling, all other pending motions are **DENIED** as moot.